# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41556
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

June 22, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

MARTIN FRANCO-GALVAN,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:16-CR-613-1

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

Marco Franco-Galvan pleaded guilty to illegal reentry after being deported from the country. He argues that the district court miscalculated the applicable Guidelines range. Before he was ordered removed for the first time, Franco-Galvan committed aggravated assault, and a Texas court imposed thirty days in jail and ten-years deferred adjudication probation. After the

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-41556

order of removal, a Texas court revoked his probation and sentenced him to fifteen years in prison.  To make a key Guidelines calculation, the district court treated his pre-deportation conviction as carrying the long prison sentence, rather than the term of probation.  Under the Guideline that used to apply to illegal reentry offenses, only the term of probation would be considered.  *United States v. Bustillos-Pena*, 612 F.3d 863 (5th Cir. 2010).  The Guideline was recently changed and we have to decide whether that change requires a different result.  Concluding it does not, we vacate Franco-Galvan's sentence and remand for resentencing.

## I.

In August 2005, Franco-Galvan sustained a Texas aggravated assault conviction for which he was sentenced to 10 years of deferred adjudication probation (with 30 days in jail as a condition of probation).  This occurred before he was ordered removed for the first time in September 2005.  He came back after removal. In January 2007, a Texas court convicted him of the misdemeanor offense of driving while intoxicated.  That same month, due to this new state offense, the district court revoked his probation, adjudicated him guilty, and sentenced him to fifteen years in prison.  Upon release from that sentence, he was deported again to Mexico.

Franco-Galvan came back again resulting in the case we are considering.  He pleaded guilty to illegal reentry, and his sentencing hearing was held last November using the 2016 version of the Guidelines.  His sentence was determined as follows.  The court began with a base offense level of eight.  It then added ten levels pursuant to section 2L1.2(a)(2)(A) for "a conviction for a felony offense . . . for which the sentence imposed was five years or more" sustained before he was ordered removed.  It then subtracted three levels for acceptance of responsibility.  In tandem with his criminal history category of

2

No. 16-41556

III, this calculation resulted in a Guidelines range of twenty-four to thirty months imprisonment.

Franco-Galvan objected to the ten-level increase. He thought that he should instead receive a four level increase pursuant to section 2L1.2(a)(2)(D) for "a conviction for any other felony offense" sustained before he was ordered removed. He reasoned that, prior to the removal order, he was only sentenced to thirty days in jail and a term of probation and that the fifteen-year sentence upon revocation only came after the removal order. If subsection (a)(2)(D) were applied rather than subsection (a)(2)(A), his Guidelines range would be ten to sixteen months imprisonment.

Although the district court rejected Franco-Galvan's Guidelines argument, it sentenced him below the range to eighteen months in prison. Franco-Galvan appeals.

## II.

Interpreting a previous version of section 2L1.2, we held that district courts should look to the original sentence of probation imposed prior to the defendant's deportation order and not any prison sentence imposed upon revocation that followed the order. *Bustillos-Pena*, 612 F.3d at 868–69. The government has taken the position that the 2016 amendment to section 2L1.2 abrogated *Bustillos-Pena*. This appeal then is ultimately about whether the 2016 amendments to section 2L1.2 changed the Guidelines enough to permit revisiting our prior case.

When *Bustillos-Pena* was decided, the portion of section 2L1.2 at issue read as follows: "If the defendant previously was deported, or unlawfully remained in the United States, after—(A) a conviction for a felony that is (I) a drug trafficking offense for which the sentence imposed exceeded 13 months

## No. 16-41556

. . . increase by 16 levels . . . ."[1] U.S.S.G., § 2L1.2(b)(1) (2008).  Confronting this language, we decided that the provision was ambiguous and, in light of the rule of lenity, did not include prison time given upon revocation of probation after the defendant's prior removal.  *Bustillos-Pena*, 612 F.3d at 868–69.  A number of other circuits came to the same conclusion, though a smaller number disagreed.  *Compare United States v. Lopez*, 634 F.3d 948 (7th Cir. 2011) (reaching the same conclusion but holding that there was no need to invoke the rule of lenity to do so), *United States v. Rosales-Garcia*, 667 F.3d 1348 (10th Cir. 2012), *and United States v. Guzman-Bera*, 216 F.3d 1019 (11th Cir. 2000), *with United States v. Compres-Paulino*, 393 F.3d 116 (2d Cir. 2004).

In the 2012 amendments, the Sentencing Commission recognized the divide among the circuits and issued an amendment siding with the majority—expressly announcing this intention in the accompanying notice.  U.S.S.G., amend. 764 (2012).  The amendment altered the definition of "sentence imposed" in the commentary to include the italicized text:

> "Sentence imposed" has the meaning given the term "sentence of imprisonment" in Application Note 2 and subsection (b) of § 4A1.2 (Definitions and Instructions for Computing Criminal History), without regard to the date of the conviction.  The length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole or supervised release, *but only if the revocation occurred before the defendant was deported or unlawfully remained in the United States.*

U.S.S.G. § 2L1.2 cmt. (n.1)(B)(vii) (2012) (emphasis supplied).

In 2016, the Sentencing Commission made far more extensive changes to the section.  U.S.S.G. amend. 802 (2016).  In place of the old system of looking at the type of felony that the defendant had committed prior to removal, the Commission directed that the length of the defendant's felony

---

[1] A number of other offenses apart from drug trafficking were also listed in the omitted text.

No. 16-41556

sentence be considered instead.  U.S.S.G. § 2L1.2(b)(2).  It also introduced a new subsection that provided for enhancements based on offenses committed after the defendant was ordered deported.  *Id.* § 2L1.2(b)(3).  Additionally, the amendment altered the phrasing of the subsection for convictions sustained prior to the defendant's first order of deportation.  It now reads: "If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant sustained—(A) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more, increase by 10 levels . . . ."  *Id.* § 2L1.2(b)(2).

As the government emphasizes, the Sentencing Commission also deleted the language (italicized above) that the 2012 amendment had added to the definition of "sentence imposed."  The commentary now reads:

> "Sentence imposed" has the meaning given the term "sentence of imprisonment" in Application Note 2 and subsection (b) of § 4A1.2 (Definitions and Instructions for Computing Criminal History). The length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole, or supervised release.

U.S.S.G. § 2L1.2 cmt. (n.2) (2016).  The Sentencing Commission did not address this deletion in the notice accompanying the amendment.  U.S.S.G. amend. 802 (2016).

The government argues that this court should no longer follow *Bustillos-Pena*.  Its first contention is that the current language on prior convictions "reads more succinctly than any preceding version" and replaced the word "after" for the word "before" to describe the conviction—deportation sequence. But mere changes in phrasing that leave the logic of a provision intact are not the substantive changes in law that justify departing from the decision of a prior panel.

5

No. 16-41556

The government's second contention similarly relies on the substitution of the word "before" for the word "after." It argues that the current text uses the word "conviction" to fix the key event that must come before the order of deportation to trigger subsection 2L1.2(b)(2). This argument was previously considered when the text spoke of deportation occurring "after" the "conviction." At that time, it was adopted by the dissent in *Bustillos-Pena* but not accepted by the majority. *Bustillos-Pena*, 612 F.3d at 870 (Clement, J., dissenting). Rearranging the sentences and substituting "before" for "after" does not add to the force of this argument that a prior panel rebuffed.

The government's points about the emendations and additions to the text notably do not touch the reasoning relied upon by this court in *Bustillos-Pena*. First of all, we began in *Bustillos-Pena* with the assumption that the "purpose of the sixteen-level enhancement is to ensure that a defendant who reenters the United States illegally after having committed a serious crime is punished more severely than a defendant who reenters the country illegally without having committed a serious crime." *Id.* at 867. We also accepted that the "seriousness of a defendant's previous crime is measured by looking at the type of conviction and the length of the sentence he received." *Id.* We concluded, "Illegal reentry by a defendant who received a probated sentence is not as great a cause for concern as illegal reentry by a defendant who was given an actual sentence of imprisonment for the same offense, because the probated defendant's offense was not deemed to be as serious by the court of conviction." *Id.* To conclude otherwise would be counterintuitive, we reasoned, because the enhancement is "designed to reflect the nature of a defendant's illegal reentry offense" and not "unrelated conduct that occurred long after the reentry." *Id.* In other words, a defendant who was deported after committing a more serious crime (as judged by the initial sentence) is committing a graver crime by returning unlawfully than a defendant who committed a less serious crime

prior to being deported. *See Lopez*, 634 F.3d at 951 ("Our interpretation of the guideline is consistent with both the purpose behind the enhancement and the larger goal of consistent application of the Sentencing Guidelines. Defendants who reenter the country illegally after having committed more serious drug trafficking crimes should be punished more severely than defendants who reenter the country illegally after having committed less serious drug trafficking crimes.").

Second of all, we were also concerned in *Bustillos-Pena* about inconsistencies that might arise from a contrary decision. We noted that a "defendant who was sentenced to probation and deported, and who later reentered illegally, could have his probation revoked by state authorities if they discovered that he had reentered illegally." *Bustillos-Pena*, 612 F.3d at 868. On the government's reading, such a defendant, prosecuted for illegal reentry, would then be susceptible to a stiff enhancement founded on the prison sentence entered upon revocation. *Id.* In the meantime, "a defendant with an identical criminal history who also illegally reentered, but was fortunate enough to be apprehended by ICE before the state authorities, would have a much lower sentence for his guideline range, even if the state later revoked his probation based on his federal conviction." *Id.* The Seventh Circuit "shared these concerns," *Lopez*, 634 F.3d at 952, as did the Sentencing Commission when it issued the 2012 amendments, U.S.S.G. amend. 764, at 26–27.

It is true that we now have subsection 2L1.2(b)(3), covering criminal conduct after the defendant's first deportation order, in addition to the longstanding focus of subsection 2L1.2(b)(2) on convictions and sentences sustained prior to the first deportation order. In assessing the nature of a defendant's illegal reentry defense, the Commission now wants district courts to look at post-deportation conduct as well. The Commission, however, gave its new instruction differently, making the operative time the point when "the

defendant engaged in criminal conduct" rather than when "the defendant sustained a conviction." This means that the addition of subsection 2L1.2(b)(3) can be squared with *Bustillos-Pena*. It is only criminal conduct after a deportation order, resulting in a conviction, that is treated as altering the nature of the offense; it remains the case that the contribution of a conviction sustained prior to the deportation order to the seriousness of the illegal reentry offense is to be assessed based on the original, pre-deportation sentence, not a sentence issued upon revocation post-deportation (which may have resulted from conduct that was not criminal but a violation of probation such as failure to report).

The government's most compelling point is that the Commission deleted the language, "but only if the revocation occurred before the defendant was deported or unlawfully remained in the United States," from the commentary. It argues that the Commission must have deleted it for a reason: "The current deletion of the . . . timing language can be no accident given the circuit conflict caused by the absence of the language prior to 2012." When it issued the 2016 amendments, the Commission said nothing about deleting this particular language. Rather, it spoke of three primary concerns motivating the overall changes: (1) replacing the categorical approach for evaluating the seriousness of collateral offenses with instructions to consider the length of the sentence imposed; (2) reducing the size of the enhancements for collateral offenses; and (3) taking into account criminal conduct after a defendant's first order of deportation.

It is sometimes said that silence speaks volumes, but it does not speak loudly enough in this case to convince us that the Commission changed its mind and no longer agrees with *Bustillos-Pena*. The mystery surrounding the disappearing language does not compel the conclusion that we are witnessing a policy shift. When the Commission resolved the circuit split in 2012, it

plainly announced its intention to do so. If the Commission has now thought better of its previous decision, we would expect to see a comparable announcement. The deletion of the commentary might be explained by the addition of post-removal criminal history to the Guideline, so that the Commission thought this issue might no longer arise. As this case demonstrates, however, it still does when a defendant is convicted and sentenced before the initial removal and then has probation revoked after removal. Regardless of the unexplained reason for deleting the commentary, what remains for our interpretation is language in the Guideline not meaningfully different from that we interpreted in *Bustillos-Pena.* And we reached that decision without any clarifying commentary from the Commission. Although this is a close call, the arguments the government raises are not enough to compel us to read substantially similar language different from how we have already interpreted it.

## III.

The government argues that any error in applying the Guidelines was harmless. It emphasizes that the district court varied below the Guidelines range. This fact is insufficient for the government to carry its burden of demonstrating harmless error. *See United States v. Martinez-Romero*, 817 F.3d 917, 924 (5th Cir. 2016) (holding that the government "must compellingly prove that the district court would have imposed a sentence outside the properly calculated sentencing range for the same reasons it provided at the sentencing hearing"). That the district court was willing to sentence below what it believed was the correct Guidelines range is no guarantee that it would be willing to sentence above the true range. That is especially true when the eighteen month sentence the court imposed was above the ten-to-sixteen month range that should have applied. And the record here is devoid of the kind of statements from the district court that indicate it would impose the

same sentence regardless of whether it correctly sustained the defendant's objection to its Guidelines calculation. *See United States v. Huskey*, 137 F.3d 283, 289 (5th Cir. 1998) (explaining that government "must point to evidence in the record that will convince us that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error.").

\* \* \*

We VACATE the sentence and REMAND to the district court for resentencing.