FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*,<br><br>v.<br><br>VIRGINIO HERNANDEZ MARTINEZ, AKA Virginia Hernandez, AKA Chris Martinez, *Defendant-Appellant.* | No. 17-50026<br><br>D.C. No. 8:16-cr-00122-DOC-1<br><br>OPINION |

Appeal from the United States District Court for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted August 31, 2017
Pasadena, California

Filed September 15, 2017

Before: William A. Fletcher and Sandra S. Ikuta, Circuit Judges, and Sarah Evans Barker,[*] District Judge.

Opinion by Judge Ikuta

[*] The Honorable Sarah Evans Barker, United States District Judge for the Southern District of Indiana, sitting by designation.

## SUMMARY**


### Criminal Law

The panel vacated a sentence for illegal reentry, in a case in which the district court applied an enhancement under U.S.S.G. § 2L1.2(b)(2)(B), which, as amended in 2016, applies "[i]f, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant sustained . . . a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more."

The defendant, who sustained a felony conviction before he was first deported, was sentenced to only one year of incarceration before his first deportation order; the sentence was increased to three years of incarceration when his probation was revoked after he returned to the United States. The panel held that when viewed in its historical context, the amended § 2L1.2(b)(2)(B) is best read as carrying forward the Sentencing Commission's prior, unambiguous conclusion that a qualifying sentence must be imposed before the defendant's first order of deportation or removal. The panel concluded that because the defendant's qualifying prior felony conviction did not incur a sentence of two years or more until after he had been deported for the first time, he did not qualify for an enhancement under § 2L1.2(b)(2)(B) (2016). The panel remanded for resentencing.


** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

James H. Locklin (argued), Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Joseph T. McNally (argued), Assistant United States Attorney; Lawrence S. Middleton, Chief, Criminal Division; Sandra R. Brown, Acting United States Attorney; United States Attorney's Office, Santa Ana, California; for Plaintiff-Appellee.

## OPINION

IKUTA, Circuit Judge:

Virginio Hernandez Martinez pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1326. At sentencing, the district court applied an eight-level enhancement under § 2L1.2(b)(2)(B) of the 2016 United States Sentencing Guidelines ("U.S.S.G.").[1] This enhancement is applicable "[i]f, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant sustained . . . a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more." U.S.S.G. § 2L1.2(b)(2)(B) (2016). Hernandez Martinez argues that the district court erred in applying this enhancement. Although Hernandez

[1] The district court sentenced Hernandez Martinez in January 2017, so the 2016 Guidelines apply. *See Johnson v. Gomez*, 92 F.3d 964, 968 (9th Cir. 1996).

Martinez sustained a felony conviction before he was first ordered deported, he was sentenced to only one year of incarceration before his first deportation order; the sentence was increased to three years of incarceration after he returned to the United States. We conclude that Hernandez Martinez's conviction did not qualify for the eight-level enhancement under § 2L1.2(b)(2)(B), and we therefore vacate the sentence and remand for resentencing.

I

Virginio Hernandez Martinez is a native and citizen of Mexico. In 2003, California authorities arrested and charged him with felony lewd acts with a child. He pleaded guilty, and the state court sentenced him to five years of probation and 365 days in jail.

In June 2004, Hernandez Martinez was deported to Mexico for the first time. The state court revoked his probation the following month when Hernandez Martinez failed to report to his probation officer. He returned to the United States without authorization in May 2005, and California sentenced him to three years of incarceration for the revoked probation term in March 2006.

After serving the state sentence, Hernandez Martinez pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1326 and was sentenced to a year and a day in custody. The government deported him again at the end of that sentence, but he again returned to the United States without authorization in March 2014. Approximately two years later, California charged Hernandez Martinez with a misdemeanor drug offense and a bicycle equipment infraction; he pleaded guilty and was sentenced to four days in jail.

After completing his 2016 state sentence, Hernandez Martinez was again arrested and charged with felony illegal reentry under § 1326, to which he pleaded guilty. At the sentencing hearing for the illegal reentry offense, the district court used the applicable 2016 Guidelines to calculate a base offense level of eight. *See* U.S.S.G. § 2L1.2(a) (2016). The district court also applied two specific offense characteristic enhancements. First, it imposed a four-level enhancement because Hernandez Martinez had previously sustained a felony illegal reentry conviction. *See id.* § 2L1.2(b)(1)(A). The district court then imposed an eight-level enhancement under § 2L1.2(b)(2)(B), ruling that Hernandez Martinez's California conviction for felony lewd acts with a child was "a conviction for a felony offense (other than an illegal reentry offense)" imposed "before the defendant was ordered deported or ordered removed from the United States for the first time" and "for which the sentence imposed was two years or more." *Id.* § 2L1.2(b)(2)(B). Hernandez Martinez objected to this eight-level enhancement both in writing and at the sentencing hearing. In his view, the California conviction did not trigger the enhancement because he had been sentenced to only a year of prison for felony lewd acts with a child before his first deportation order in 2004; the remainder of the sentence for that offense was imposed in March 2006, *after* he returned to the United States.

Notwithstanding this objection, the district court applied the eight-level enhancement, resulting in an adjusted offense level of 20. The district court gave Hernandez Martinez a three-level reduction for acceptance of responsibility and reduced Hernandez Martinez's criminal history to Category I. The resulting advisory sentencing range was 24 to 30 months, *see id.* ch. 5, pt. A, and the district court imposed a below-Guidelines 18-month sentence.

Hernandez Martinez filed a timely appeal challenging the district court's interpretation of § 2L1.2(b)(2)(B). We have jurisdiction under 18 U.S.C. § 3742, and our review of the district court's interpretation of the sentencing guidelines is de novo. *United States v. Lee*, 821 F.3d 1124, 1126 (9th Cir. 2016).

II

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "Although the Sentencing Guidelines are merely advisory," *United States v. Joey*, 845 F.3d 1291, 1295 (9th Cir. 2017), "[a] mistake in calculating the recommended Guidelines sentencing range is a significant procedural error that requires us to remand for resentencing," *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011).

We interpret the Sentencing Guidelines using the ordinary tools of statutory interpretation. *See United States v. Cruz-Gramajo*, 570 F.3d 1162, 1167 (9th Cir. 2009). "As with the interpretation of legal texts generally, our search for the Sentencing Commission's intent will most often begin and end with the text and structure of the Guidelines." *Joey*, 845 F.3d at 1297 n.8 (internal quotation marks omitted). We consider not only a guideline's text, but also the Commission's commentary interpreting or explaining the text, which "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). We may also look to the provision's history and purpose, *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014), such as by consulting "the

Commission's statements of reason" for a particular amendment, *United States v. Ornelas*, 825 F.3d 548, 554 (9th Cir. 2016).

A

Section 2L1.2(b)(2)(B) of the 2016 Guidelines Manual provides:

> (b) Specific Offense Characteristics . . .
>
> > (2) (Apply the Greatest) If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant sustained— . . .
> >
> > > (B) a conviction for a felony offense (other than an illegal reentry offense) for which *the sentence imposed* was two years or more, increase by 8 levels[.]

U.S.S.G. § 2L1.2(b)(2)(B) (2016) (emphasis added). As defined in the application notes, the term "sentence imposed" has the same meaning as "sentence of imprisonment" in Chapter 4, *id.* § 2L1.2 cmt. n.2, which is "a sentence of incarceration and refers to the maximum sentence imposed," *id.* § 4A1.2(b)(1). The application notes for § 2L1.2 further provide that "[t]he length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole, or supervised release." *Id.* § 2L1.2 cmt. n.2.

The question presented here is whether the phrase "sentenced imposed" includes terms of imprisonment that were imposed after the defendant's first deportation order when assessing the defendant's eligibility for the § 2L1.2(b)(2)(B) enhancement. On that question, § 2L1.2(b)(2)(B) is "susceptible to more than one reasonable interpretation." *See Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 556 (9th Cir. 2016). Hernandez Martinez argues that § 2L1.2(b)(2)(B) applies only to a defendant who has sustained a conviction and received a two-year sentence before the defendant's first order of deportation or removal. The government, by contrast, argues that the enhancement applies to a defendant regardless of when the qualifying sentence was imposed because the language imposing the temporal limitation ("before the defendant was ordered deported . . . for the first time") addresses only when the conviction is sustained, not when the sentence is imposed. *Cf. United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008) (applying the presumption that Congress places modifying language as close as possible to the word modified).

Because the text of § 2L1.2(b)(2)(B), standing alone, is susceptible of either Hernandez Martinez's or the government's interpretation, we must consider the provision's language in light of its history and purpose.

B

We begin by considering § 2L1.2(b)(2)(B) in its historical context. Courts have faced the same ambiguity confronting us today in a predecessor to § 2L1.2(b)(2). Before 2012, this issue divided the courts of appeals. In relevant part, the pre-2012 version of § 2L1.2(b) provided:

(b) Specific Offense Characteristic

(1) Apply the Greatest:

If the defendant previously was deported, or unlawfully remained in the United States, after—

(A) a conviction for a felony that is (i) a drug trafficking offense for which *the sentence imposed* exceeded 13 months . . . , increase by 16 levels if the conviction receives criminal history points under Chapter Four or by 12 levels if the conviction does not receive criminal history points[.]

U.S.S.G. § 2L1.2(b) (2011) (emphasis added). In interpreting this language, courts struggled with the question whether "the sentence imposed" for the specified offense must have been imposed before the defendant was deported, or whether some portion of the sentence could be imposed after the deportation, due to revocation of probation or for some other reason. Although we did not have occasion to address this question, four courts of appeals held that a qualifying sentence must be imposed before deportation, *see United States v. Rosales-Garcia*, 667 F.3d 1348, 1351 (10th Cir. 2012); *United States v. Lopez*, 634 F.3d 948, 950 (7th Cir. 2011); *United States v. Bustillos-Pena*, 612 F.3d 863, 868–69 (5th Cir. 2010); *United States v. Guzman-Bera*, 216 F.3d 1019, 1021 (11th Cir. 2000) (per curiam), while only one held that a qualifying sentence could be imposed at any time so long as the defendant sustained the *conviction* before

deportation, *see United States v. Compres-Paulino*, 393 F.3d 116, 117–19 (2d Cir. 2004) (per curiam).

In 2012, the Sentencing Commission resolved the circuit split by adopting the majority approach. To implement this decision, the Commission amended § 2L1.2's commentary to state that "[t]he length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole, or supervised release, *but only if the revocation occurred before the defendant was deported or unlawfully remained in the United States.*" U.S.S.G. § 2L1.2 cmt. n.1(B)(vii) (2012) (emphasis added). The Commission explained that "in some cases revocation proceedings commonly occur before the offender is sentenced on the illegal reentry offense, while in other cases the revocation occurs after the federal sentencing," and disparities in sentences could occur "based on the 'happenstance' of whether that revocation occurred before or after the prosecution for the illegal reentry offense." U.S.S.G. app. C amend. 764 at 12 (2016 supp.) (citing and quoting *Rosales-Garcia*, 667 F.3d at 1354). Because the enhancement is intended to reflect the seriousness of the offense conduct, as indicated by the length of the sentence imposed, the Commission believed it could achieve "more consistent application of the enhancements . . . and promote uniformity in sentencing" by "assessing the seriousness of the prior crime based on the sentence imposed before deportation." *Id.*

The Commission further amended § 2L1.2 in 2016. *See id.* amend. 802 at 147–53. First, the Commission amended § 2L1.2(b)(2)(B) to its current form: "If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant sustained . . . a conviction for a felony offense (other than an illegal reentry

offense) for which the sentence imposed was two years or more . . . ." *Id.* at 148. Second, the Commission added a new subsection, § 2L1.2(b)(3), which provides enhancements for defendants who "engage[] in criminal conduct" *after* their first order of deportation or removal, with enhancements varying depending on the severity of the "sentenced imposed." *Id.* at 148–49, 157. Third, the Commission removed the language it had previously added to § 2L1.2's commentary to resolve the circuit split, i.e., the language stating that the length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole, or supervised release, "but only if the revocation occurred before the defendant was deported or unlawfully remained in the United States." *Compare id.* at 150 (removed language), *with id.* at 153 (enacted language). In explaining the reasons for the amendments to § 2L1.2, the Commission did not mention its 2012 policy decision resolving the circuit split, nor suggest it was now taking a different approach. *See id*. at 155–59.

C

Our recitation of this history shows that the Commission originally resolved an interpretive ambiguity by adopting the majority approach that a "sentence imposed" for purposes of § 2L1.2(b) excluded a revocation sentence imposed after deportation. But the four years of clarity on this issue ended in 2016 when the Commission (1) revised § 2L1.2(b)(2)(B) in a manner that introduced the same ambiguity into the text while (2) removing the 2012 language that had resolved the prior circuit split. The question before us is whether we should infer from the Commission's 2016 amendment that it intended to reverse the policy judgment it made in 2012. Taking into account all the relevant revisions in 2016, as well

as the historical context, we conclude that the Commission did not reverse course in 2016, but maintained its 2012 policy judgment resolving the circuit split.

There are several reasons for this conclusion. The first is textual: The Commission signaled its intent to stay the course by amending § 2L1.2(b)(2) to include language similar to the 2012 language added to the commentary. In 2012, the Commission stated that a term of imprisonment following revocation of probation, parole, or supervised release is included in the sentence imposed "if the revocation occurred before the defendant was deported or unlawfully remained in the United States." U.S.S.G. § 2L1.2 cmt. n.1(B)(vii) (2012). The current language establishing the pertinent timeframe—"[i]f, before the defendant was ordered deported or ordered removed from the United States for the first time," *id.* § 2L1.2(b)(2) (2016)—closely matches. This suggests that the Commission intended to maintain its 2012 policy judgment, but decided to implement that judgment through § 2L1.2(b)(2)'s text rather than through the commentary.

Second, the Commission's removal of the 2012 language was necessary for reasons unrelated to a change in policy, namely, the addition of § 2L1.2(b)(3), which provides enhancements for convictions that occur *after* the first deportation or removal order. Because the 2016 Guidelines (unlike prior editions) specially account for a defendant's convictions and sentences resulting from criminal conduct after a first order of deportation, it would no longer make sense to allow consideration of sentences imposed for revocation of probation, parole, or supervised release "only if the revocation occurred *before* the defendant was deported or unlawfully remained in the United States." U.S.S.G. § 2L1.2 cmt. n.1(B)(vii) (2012) (emphasis added). The need

to remove the 2012 language from the Commentary to avoid inconsistency with § 2L1.2(b)(3) supports the inference that the Commission shifted the language expressing its 2012 policy judgment to the text of § 2L1.2(b)(2).

Third, other than removing the 2012 language from the commentary (which was required by the addition of § 2L1.2(b)(3)), the Commission did not suggest that it intended to adopt the minority position that a "sentence imposed" for purposes of § 2L1.2(b)(2) includes revocation sentences imposed after a first order of deportation. Nor did the Commission suggest it had changed its conclusion from 2012 that courts should assess only those sentences imposed *before* deportation in order to avoid unwarranted disparities in applying the enhancement. As the Fifth Circuit explained when endorsing the same interpretation we adopt today, the "disappearing language" from the commentary "does not compel the conclusion that we are witnessing a policy shift." *United States v. Franco-Galvan*, 864 F.3d 338, 343 (5th Cir. 2017) (per curiam). "When the Commission resolved the circuit split in 2012, it plainly announced its intention to do so," and "[i]f the Commission has now thought better of its previous decision, we would expect to see a comparable announcement." *Id.* We do not suggest that an amendment has no effect unless the Commission explains the intended change in its statement of reasons for amendment. But where, as here, the Commission previously reached a reasoned judgment on a divisive issue, and the basis for that judgment has not changed, we will not infer a dramatic shift in policy where the Commission removes language implementing that judgment without explanation but also adds new language that readily supports the status quo. A contrary inference would improperly afford "decisive significance" to the "unexplained disappearance" of language

that we conclude was likely removed to achieve goals other than a change in policy. *Mead Corp. v. Tilley*, 490 U.S. 714, 723 (1989).

We reject the government's argument that the current commentary requires us to reach a contrary result because the definition of "sentence imposed" includes "*any* term of imprisonment given upon revocation of probation, parole, or supervised release." U.S.S.G. § 2L1.2 cmt. n.2 (2016) (emphasis added). Although the reference to "any term of imprisonment" is expansive, this language does not resolve the temporal issue: whether the definition refers to any term of imprisonment imposed *before* the first deportation order, or may include any term imposed before *or after* the first deportation order. Indeed, courts rejected this same argument before the Commission resolved the pre-2012 circuit split. *See Rosales-Garcia*, 667 F.3d at 1352 ("[T]he commentary simply does not address the temporal constraint at the crux of this appeal."); *Lopez*, 634 F.3d at 952 ("[T]he application note and the argument do not address the issue of timing under section 2L1.2(b)(1)."). The Commission had no reason to suspect that returning this portion of the commentary to its pre-2012 form would result in a different interpretation from what courts had previously given to it.

We conclude that when viewed in its historical context, the amended § 2L1.2(b)(2)(B) is best read as carrying forward the Commission's prior, unambiguous conclusion that a qualifying sentence must be imposed before the defendant's first order of deportation or removal.[2]

---

[2] In arguing against this conclusion, the government asks us to consider an interpretation published in the 2016 Primer on the Immigration Guidelines. *See* U.S. Sentencing Commission, Office of

III

In this case, Hernandez Martinez's California conviction for lewd conduct with a child did not incur a sentence of two years or more until 2006, after Hernandez Martinez had been ordered deported for the first time. Therefore, the conviction did not qualify Hernandez Martinez for § 2L1.2(b)(2)(B)'s eight-level enhancement. Because the district court concluded otherwise when calculating the advisory guidelines sentencing range, we vacate the sentence and remand for resentencing. *See Munoz-Camarena*, 631 F.3d at 1030.

**VACATED AND REMANDED.**

---

General Counsel, *Primer on the Immigration Guidelines* (Nov. 2016), *available at* https://www.ussc.gov/sites/default/files/pdf/training/primers/2016_Primer_Immigration.pdf. We decline to do so. The Primer expressly disavows the authority to "represent the official position of the Commission," *id.* at i, and its unreasoned interpretation lacks persuasive power. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).