**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 25-2897 |
| *Plaintiff - Appellee,* | D.C. No. 3:22-cr-02548-JLS-1 |
| v. | |
| CRUZ TORRES-GONZALEZ, | OPINION |
| *Defendant - Appellant.* | |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Submitted December 9, 2025[*]
Pasadena, California

Filed March 16, 2026

Before: Milan D. Smith, Jr., Morgan B. Christen, and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Christen

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

## Criminal Law

The panel affirmed the sentence imposed on Cruz Torres-Gonzalez for his 2024 conviction for illegal reentry into the United States in violation of 8 U.S.C. § 1326.

Torres-Gonzalez had previously been convicted, in 2014, of illegal reentry in violation of § 1326 and making false statements to the federal officers who arrested him in violation of 18 U.S.C. § 1001. He was sentenced to concurrent 35-month terms on each count in the same proceeding.

At sentencing for the 2024 conviction, the district court applied two enhancements pursuant to U.S.S.G. § 2L1.2 (2024). At issue in this appeal was the enhancement directed by U.S.S.G. § 2L1.2(b)(3), which provides a specific offense-level enhancement based upon the length of the sentence imposed for Torres-Gonzalez's prior non-reentry conviction that occurred after he was first ordered removed from the United States.

Torres-Gonzalez argued that the district court erred by applying an eight-level enhancement based on his prior false-statement conviction. He reasoned that the 35-month sentence he received in 2014 for making a false statement was determined by his § 1326 felony illegal reentry conviction because the charges were grouped and the § 1326 charge carried the highest offense level. Thus, according to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Torres-Gonzalez, the 35-month sentence he received for the false-statement offense was "controlled" or even "replaced" by the sentence imposed for his 2014 illegal-reentry conviction, making it impossible for the district court to determine the sentence he would have received for the false-statement offense if he had been sentenced for it independently. Torres-Gonzalez urged this court to direct the district court to apply on remand the residual four-level enhancement, U.S.S.G. § 2L1.2(b)(3)(D), because that enhancement is not determined by the length of a prior sentence.

The panel rejected this argument, discerning no error in the district court's reading of the Guidelines' text. Torres-Gonzalez's sentence for the false-statement conviction was not "replaced" by the sentence for the reentry offense; rather the charges were grouped consistent with Guidelines. The history and purpose of § 2L1.2 further support the district court's approach. The panel also rejected Torres-Gonzalez's argument that the correct application of § 2L1.2(b)(3) to his case is ambiguous. The panel therefore did not defer to the Sentencing Commission's commentary but noted that consideration of the commentary would lead to the same result. Because there is no ambiguity, the rule of lenity likewise has no role to play.

## COUNSEL

D. Benjamin Holley, Lawrence Casper, and Evangeline Dech, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Chief, Appellate Section; Criminal Division; Adam Gordon, United States Attorney;

Office of the United States Attorney, United States Department of Justice, San Diego, California; for Plaintiff-Appellee.

Martin G. Molina, Law Office of Martin G. Molina, San Diego, California, for Defendant-Appellant.

**OPINION**

CHRISTEN, Circuit Judge:

In 2014, Cruz Torres-Gonzalez was convicted of illegal reentry into the United States in violation of 8 U.S.C. § 1326 and of making false statements to the federal officers who arrested him in violation of 18 U.S.C. § 1001. He was sentenced to 35 months on each count in the same proceeding. The sentences ran concurrently.

In 2024, Torres-Gonzalez was convicted once again of illegal reentry. At his sentencing, the district court applied two offense-level enhancements pursuant to § 2L1.2 of the Sentencing Guidelines. U.S. Sent'g Guidelines Manual § 2L1.2 (U.S. Sent'g Comm'n 2024) (U.S.S.G.). At issue in this appeal is the enhancement directed by U.S.S.G. § 2L1.2(b)(3), which provides a specific offense-level enhancement based upon the length of the sentence imposed for Torres-Gonzalez's prior non-reentry conviction that occurred after he was first ordered removed from the United States.

Torres-Gonzalez argues that the district court erred by applying an eight-level enhancement based on his prior false-statement conviction. He does not dispute that an eight-level enhancement is triggered by a sentence of two

years or more for prior non-reentry convictions, U.S.S.G. § 2L1.2(b)(3)(B), but he argues that the length of the sentence for his false-statement offense was actually determined by the sentence he received for his 2014 reentry conviction. We conclude that the district court properly interpreted the Sentencing Guidelines when it determined the enhancements applicable at Torres-Gonzalez's 2024 sentencing. Accordingly, we affirm the sentence imposed by the district court.

## BACKGROUND

In 2012, Torres-Gonzalez was arrested while entering the United States without authorization. He provided a false name to the agents who detained him. After a jury trial in 2014, he was convicted of illegal reentry under 8 U.S.C. § 1326 and making false statements to a federal officer under 18 U.S.C. § 1001. Torres-Gonzalez had been deported on multiple prior occasions. The parties agree that both of the 2014 convictions constitute felonies and that Torres-Gonzalez was sentenced to 35 months in prison for each offense, to be served concurrently. The court calculated the Guidelines range as 33 to 41 months and acknowledged that Torres-Gonzalez had requested a variance to 24 months. The court concluded that a 35-month sentence was appropriate even though the offense did not involve drugs or violence because Torres-Gonzalez's repeated contact with immigration authorities indicated that deterrence was a relevant policy goal and the 27-month sentence he received for his prior illegal reentry conviction had evidently failed to deter him.

In 2024, Torres-Gonzalez was again convicted of illegal reentry. The district court imposed a 51-month sentence for that offense, and it is the sentence that is the subject of this

appeal. The district court adopted the recommendations in the presentence report and applied a four-level enhancement based on Torres-Gonzalez's 2014 felony conviction for illegal reentry, U.S.S.G. § 2L1.2(b)(1)(A), and an eight-level enhancement based on the 35-month sentence he received for making a false statement, U.S.S.G. § 2L1.2(b)(3)(B).

Torres-Gonzalez objected to the eight-level enhancement. He argued that the length of the sentence he received for his prior false-statement conviction was higher than it would have been if he had not been simultaneously convicted and sentenced for the 2014 illegal-reentry offense. For this reason, he contended that the court should not have imposed the eight-level enhancement.

The district court agreed that Torres-Gonzalez would have received a lower sentence for his false-statement conviction if he had not been sentenced at the same time for illegal reentry. Nonetheless, the court determined that the eight-level enhancement was "technically correct" pursuant to the text of the Sentencing Guidelines. The enhancements resulted in an offense level of 22. Along with Torres-Gonzalez's criminal history category of V, this yielded a 77- to 96-month Guidelines sentencing range. The court departed downward four offense levels, partially because the court viewed the application of the eight-level enhancement as harsh and partially because the court agreed with defense counsel's observation that Torres-Gonzalez's prior convictions were non-violent in nature. The court declined to depart further because it agreed with the prosecutor that Torres-Gonzalez had treated the border as a "revolving door." The final Guidelines range was 51–63 months. After considering the 18 U.S.C. § 3553(a) factors, the court

imposed a sentence of 51 months in custody and three years of supervised release. Torres-Gonzalez appeals.

## STANDARD OF REVIEW

We review a district court's interpretation of the Sentencing Guidelines de novo. *See United States v. Castillo*, 69 F.4th 648, 652 (9th Cir. 2023).

## DISCUSSION

It is undisputed that the sentence Torres-Gonzalez received for the false-statement offense in 2014 was due to the operation of the Guidelines' "grouping" rules. Where a defendant has been convicted of multiple counts, U.S.S.G. § 3D1.1, the Guidelines direct that counts that are "closely related" because they "involv[e] substantially the same harm" should be "grouped." U.S.S.G. § 3D1.2. Generally, the count with the highest offense level is the offense level for the group, U.S.S.G. § 3D1.3(a), and the offense level applicable to the grouped offenses is used to determine the appropriate sentence. U.S.S.G. § 3D1.5. The "total punishment" applies concurrently to each count in a group. U.S.S.G. § 5G1.2(b) & cmt. n.1.[1]

Section 2L1.2 of the Guidelines directs how to determine the sentencing range for an illegal reentry conviction. For defendants with prior illegal reentry convictions, the court adds four offense levels. U.S.S.G. § 2L1.2(b)(1)(A). The Guidelines also call for a separate enhancement under subsection (b)(3) for prior convictions *other than* illegal reentry offenses that occur after a defendant is ordered deported or removed from the United States for the

---

[1] Here, we provide only a general statement regarding operation of the grouping rules because Torres-Gonzalez does not argue that his prior convictions were improperly grouped at his 2014 sentencing.

first time.  U.S.S.G. § 2L1.2(b)(3).  Subsections (b)(3)(A)–(D) provide for enhancements of four to ten offense levels depending on the length of the sentence actually imposed for the prior non-reentry felony offense.[2]  U.S.S.G. § 2L1.2(b)(3)(A)–(D).  In Torres-Gonzalez's case, the court applied an eight-level enhancement under subsection (b)(3)(B) for his prior false-statement conviction because he received a sentence of more than two years for that charge.

The commentary to U.S.S.G. § 2L1.2 provides:

> There may be cases in which the sentences for an illegal reentry offense and another felony offense were imposed at the same time and treated as a single sentence for purposes of calculating the criminal history score . . . . In such a case, use the illegal reentry offense in determining the appropriate enhancement under subsection (b)(1), if it independently would have received criminal history points. In addition, use the prior sentence for the other felony offense in determining the appropriate enhancement under subsection (b)(2) or (b)(3), as appropriate, if it

---

[2] Specifically, the enhancements are as follows:  (A) ten levels for a sentence of five years or more; (B) eight levels for a sentence of two years or more; (C) six levels for a sentence exceeding one year and one month; and (D) four levels for "any other prior felony conviction," which covers sentences of one year and one month or less.  U.S.S.G. § 2L1.2(b)(3)(E) is the one exception to enhancements based on sentence lengths.   It provides a two-level enhancement for three or more misdemeanor convictions that are crimes of violence or drug trafficking offenses.

> independently would have received criminal history points.

U.S.S.G. § 2L1.2 cmt. n.4.  Criminal history points are based on a defendant's prior convictions and determine the "criminal history category" component of a defendant's Sentencing Guidelines calculation.  *See* U.S.S.G. § 4A1.1. Prior sentences that have not aged out or been otherwise excluded are counted in a defendant's criminal history.  *See* U.S.S.G. § 4A1.2(e).  Torres-Gonzalez does not dispute that both of his 2014 convictions would have received criminal history points.

In notes accompanying amendments to U.S.S.G. § 2L1.2, the Sentencing Commission explained that it sought to ensure that "illegal reentry offenses and other types of offenses . . . are separately accounted for under the applicable specific offense characteristics, even if they might otherwise constitute a 'single sentence' under § 4A1.2(a)(2)."  U.S.S.G. Supp. to app. C, amend. 802, at 150 (Nov. 1, 2024) (Amendment 802).  Thus, the notes explain that "when a defendant was simultaneously sentenced for an illegal reentry offense and another federal felony offense . . . , the illegal reentry offense counts towards subsection (b)(1), while the other felony offense counts towards subsection (b)(3)."  *Id*.  The notes also explain that for two policy reasons, the Sentencing Commission expressly adopted a rule that pegs the § 2L1.2(b)(3) enhancements to the sentence imposed for the prior non-illegal reentry conviction.  First, sentence-based enhancements are simpler to apply than the categorical approach that was previously used; second, the length of a prior sentence typically reflects the seriousness of a prior offense.  *Id.* at 146, 148.

On appeal, Torres-Gonzalez again argues that imposition of the eight-level enhancement was erroneous. He reasons that the 35-month sentence he received in 2014 for making a false statement was determined by his § 1326 felony illegal reentry conviction because the charges were grouped and the § 1326 charge carried the highest offense level. He characterizes § 1326 as "the type of offense excepted from" the U.S.S.G. § 2L1.2(b)(3) enhancement provision because the Guidelines specify a four-level enhancement for prior § 1326 convictions and a sliding-scale enhancement in subsection (b)(3) only for *other* felony convictions entered after an initial § 1326 conviction. Thus, according to Torres-Gonzalez, the 35-month sentence he received for making a false statement was actually predicated upon the § 1326 conviction, and that offense should not be used to determine the appropriate enhancement added pursuant to U.S.S.G. § 2L1.2(b)(3). Torres-Gonzalez urges us to direct the district court to apply the residual four-level enhancement, U.S.S.G. § 2L1.2(b)(3)(D), on remand because that enhancement is not determined by the length of a prior sentence.

We begin by examining the text and structure of the Guidelines and determine whether this inquiry provides an unambiguous answer to the issue on appeal. If a specific guideline is not genuinely ambiguous, we do not defer to the Sentencing Commission's commentary and our inquiry ends. *See Castillo*, 69 F.4th at 655 (applying *Kisor v. Wilkie*, 588 U.S. 558 (2019), to interpretation of Sentencing Guidelines); *see also United States v. Cuevas-Lopez*, 934 F.3d 1056, 1061 (9th Cir. 2019) ("We interpret the Sentencing Guidelines using the ordinary tools of statutory interpretation." (quoting *United States v. Martinez*, 870 F.3d 1163, 1166 (9th Cir. 2017))). We "carefully consider the

text, structure, history, and purpose of a regulation" before deferring to the agency's interpretation. *Kisor*, 588 U.S. at 575 (citation modified).

U.S.S.G. § 2L1.2(b)(3) directs an increase in the defendant's offense level "[i]f, after [being] . . . ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct" resulting in a conviction. If the criminal conduct resulted in "a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more," the increase must be eight levels. *Id.* § 2L1.2(b)(3)(B). Accordingly, the district court first assessed whether Torres-Gonzalez had incurred a conviction for a felony offense other than illegal reentry after being ordered removed. The record established that Torres-Gonzalez had incurred a felony conviction for providing a false statement under 18 U.S.C. § 1001. The next step was for the sentencing court to determine the length of the sentence imposed for the prior non-reentry conviction and to apply the relevant offense-level enhancement. U.S.S.G. § 2L1.2(b)(3). The district court correctly determined that Torres-Gonzalez's 35-month sentence for the false statement offense triggered an eight-level enhancement under U.S.S.G. § 2L1.2(b)(3)(B).

Torres-Gonzalez argues that the Guidelines cannot be applied to his case in a straightforward manner because, due to the operation of the Guidelines' grouping rules, the sentence he received for the false-statement offense was "controlled" or even "replaced" by the sentence imposed for his 2014 illegal-reentry conviction. He contends that the grouping rules made it impossible for the district court to determine the sentence he would have received for the false-statement offense if he had been sentenced for it

independently, and therefore impossible to determine that an eight-level enhancement should apply.

We agree with the district court that this argument fails. As the district court recognized, the sentence for Torres-Gonzalez's non-reentry offense was likely higher than it would have been if he had been sentenced solely for making a false statement to a federal officer because the 2014 sentencing court was persuaded that a 35-month sentence was needed to deter him from continuing to enter the country illegally. Nevertheless, Torres-Gonzalez received a 35-month sentence for the false-statement conviction, and the district court faithfully applied the eight-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(3)(B). Contrary to Torres-Gonzalez's suggestion, his sentence for the false-statement conviction was not "replaced" by the sentence for the reentry offense; rather, the charges were grouped consistent with the Guidelines. We discern no error in the district court's reading of the Guidelines' text.

The history and purpose of U.S.S.G. § 2L1.2 further support the district court's approach. When the U.S.S.G. § 2L1.2 enhancements were amended in 2016, the Sentencing Commission explained that the length of prior sentences is the simplest way to determine an appropriate enhancement because "the length of sentence imposed by a sentencing court is a strong indicator of the court's assessment of the seriousness of the predicate offense at the time," and "more serious types of offenses, such as drug-trafficking offenses, crimes of violence, and sex offenses, tend[] to receive sentences of imprisonment of two years or more." Amendment 802 at 148. Torres-Gonzalez argues the 35-month sentence he received in 2014 for the § 1001 false-statement offense "was a reflection of the seriousness of the prior § 1326," not the § 1001, offense, and the eight-level

enhancement therefore did not serve its intended purpose of reflecting the seriousness of his conviction for making a false statement. We are not persuaded.

In some instances, a prior sentence may not perfectly reflect the seriousness of a prior conviction. But the Sentencing Commission did not indicate that the length of the sentence imposed would always be an exact fit, only that it would be a useful measure in a typical case. For this reason, the length of the prior sentence is the yardstick used to determine the sliding-scale enhancements imposed under U.S.S.G. § 2L1.2(b)(3). This sentence-based approach to determining the appropriate enhancement was deemed preferable for an additional reason: prior to the 2016 amendments to the Guidelines, judges were required to undertake categorical analyses of prior felony offenses to determine the applicable enhancement. The Sentencing Commission deemed that method "overly complex and resource-intensive" and one that "often l[ed] to litigation and uncertainty." Amendment 802 at 146 (explaining that the amendment was the result of multi-year research and "extensive public testimony and public comment"). The Sentencing Commission concluded that "tiered enhancements based on the length of the [prior] sentence imposed . . . would greatly simplify application of the guideline." *Id*. at 148. Torres-Gonzalez's suggestion that we peer behind the reasoning for a prior sentence or determine what the sentence may have been absent its grouping with an illegal-reentry offense runs counter to the Sentencing Guidelines' goal of simplifying the process for imposing this enhancement.

Torres-Gonzalez alternatively argues that the correct application of U.S.S.G. § 2L1.2(b)(3) to his case is ambiguous, and that this should have prompted the district

court to delve into the history of the Guidelines' amendments. First, we reject the premise that the application of U.S.S.G. § 2L1.2(b)(3) to Torres-Gonzalez's situation is ambiguous. The district court's observation that the application of the enhancement was a "very tough call" did not signal textual ambiguity; rather, it shows the district court considered the outcome harsh and reveals the rationale for the court's decision to exercise its discretion and apply a downward departure.[3] That decision accords with the Sentencing Commission's guidance in commentary to U.S.S.G. § 2L1.2, which recognizes that "[t]here may be cases in which the offense level provided by an enhancement in subsection (b)(2) or (b)(3) substantially understates or overstates the seriousness of the conduct underlying the prior offense" because the length of the sentence imposed for that prior offense does not reflect its seriousness, and in such a case "a departure may be warranted." U.S.S.G. § 2L1.2 cmt. n.6.

Torres-Gonzalez also quotes *Kisor*'s discussion of *Auer* deference in the context of Department of Veterans Affairs regulations and implies that ambiguity may arise when an agency "could not have reasonably foreseen" an individual's particular situation.[4] *See Kisor*, 588 U.S. at 566 (citation modified). This analogy is inapt because the Sentencing Commission's commentary addressing its grouping rules and the unlawful-reentry guideline leaves little doubt that it

---

[3] The judge expressed that the effect of the prior concurrent sentences "bother[ed] [her] because if he had just had that [§] 1001 [false statement conviction], there is no way it would have been scored that way."

[4] *Auer* deference refers to the practice of deferring to "agencies' reasonable readings of genuinely ambiguous regulations." *See Kisor*, 588 U.S. at 563; *Auer v. Robbins*, 519 U.S. 452 (1997).

was fully aware of how those rules would apply to defendants sentenced in illegal reentry cases. In fact, Application Note 2 to U.S.S.G. § 3D1.2 contains an example of counts that are substantially similar to those in the present case—unlawful entry and possession of fraudulent evidence of citizenship—that are grouped because those charges bear on similar immigration-related societal interests. The commentary in U.S.S.G. § 2L1.2 further evinces the Sentencing Commission's awareness that illegal reentry and other offense convictions would be grouped in some sentencing proceedings. U.S.S.G. § 2L1.2 cmt. n.4 ("There may be cases in which the sentences for an illegal reentry offense and another felony offense were imposed at the same time . . . ."). The Sentencing Commission acknowledged that while the resulting sentence may be "treated as a single sentence for purposes of calculating the criminal history score under" U.S.S.G. § 4A1.1, courts should ensure that each conviction receives a separate enhancement under U.S.S.G § 2L1.2. *See* U.S.S.G. § 2L1.2 cmt n.4; Amendment 802 at 150 (explaining that U.S.S.G. § 2L1.2(b)(3) operates to ensure an enhancement is applied even where a defendant is sentenced simultaneously on reentry and non-reentry felonies).

Because we conclude that U.S.S.G. § 2L1.2 is clear, we do not defer to the Sentencing Commission's commentary, but we do note that consideration of the commentary would lead to the same result. Torres-Gonzalez reads Application Note 4 to U.S.S.G. § 2L1.2 as directing courts considering prior convictions for reentry and non-reentry felonies to treat the predicate offense as if its sentence had been imposed separate from any other offense. He maintains that the Sentencing Commission's articulated goal of "ensur[ing] that such convictions are separately accounted for under the

applicable specific offense characteristics" supports his view, *see* Amendment 802 at 150, because there was "no articulable sentence" that could be ascribed independently to his false-statement offense. In our view, Torres-Gonzalez misreads the commentary and amendment history.

Application Note 4 and the notes accompanying Amendment 802 strongly indicate that the court's inquiry into the sentence imposed for a prior non-reentry felony is limited to whether the prior non-reentry conviction would have independently scored criminal history points. This means only that a court must determine whether the prior non-reentry offense involved a stale conviction or otherwise would have been excluded, not whether the sentence for the non-reentry offense was affected by the sentence for the § 1326 conviction. Amendment 802 at 149 (explaining that the amendment "addresses concerns" about an "unduly severe enhancement based on a single offense so old it did not receive criminal history points").

Finally, Torres-Gonzalez argues that the district court should have imposed the lower four-level enhancement in U.S.S.G. § 2L1.2(b)(3)(D) pursuant to the rule of lenity. The district court correctly declined this suggestion. The rule of lenity "only applies where there is grievous ambiguity or uncertainty in the [G]uidelines." *United States v. D.M.*, 869 F.3d 1133, 1144 (9th Cir. 2017). Here, because there is no ambiguity in the text of the relevant Guidelines or in the interplay between the Guidelines and the commentary, the rule of lenity has no role to play. U.S.S.G. § 2L1.2 traces a straightforward approach to offense-level enhancements, which the district court correctly applied.

For the foregoing reasons, we **AFFIRM** the sentence imposed by the district court.