**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 17-10438 |
| v. | D.C. No. 4:17-cr-00306-JGZ-DTF-1 |
| VICENTE CUEVAS-LOPEZ, AKA Vicente Cuevas Lopez, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted March 6, 2019
Phoenix, Arizona

Filed August 19, 2019

Before: Richard R. Clifton, Sandra S. Ikuta,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland;
Dissent by Judge Ikuta

## SUMMARY[*]

### Criminal Law

Affirming a sentence for attempted illegal reentry after deportation in violation of 8 U.S.C. § 1326, the panel held that the "single sentence rule" in U.S.S.G. § 4A1.2(a)(2) applies to the enhancements in U.S.S.G. § 2L1.2(b)(2) and (b)(3).

The single sentence rule instructs that whether to treat multiple prior sentences as a single sentence depends on whether they were separated by an intervening arrest, charged in the same instrument, or imposed on the same day; and provides that if prior sentences are treated as a single sentence, a court should use the longest sentence of imprisonment if concurrent sentences were imposed and use the aggregate sentence of imprisonment if consecutive sentences were imposed. A state court had previously sentenced the defendant to two consecutive 3.5-year terms imposed on the same day for two second-degree burglary convictions.

Because the single sentence rule applies to § 2L1.2, the panel concluded that the district court properly relied on the rule to aggregate the defendant's two consecutive 3.5-year sentences in applying a ten-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(3)(A), which applies to a defendant charged under § 1326 who was previously ordered deported or removed and who subsequently committed a felony

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

offense for which the sentence imposed was five years or more.

Dissenting, Judge Ikuta wrote that under the plain language of the Sentencing Guidelines, the defendant does not have "a conviction for a felony offense . . . for which the sentence imposed was five years or more," U.S.S.G. § 2L1.2; and that the applicable Guidelines range should not be increased based solely on inferences regarding the Sentencing Commission's unspoken intent.

## COUNSEL

Jeffrey G. Buchella (argued), Tucson, Arizona, for Defendant-Appellant.

Corey J. Mantei (argued), Assistant United States Attorney; Elizabeth A. Strange, First Assistant United States Attorney; Robert L. Miskell, Appellate Chief; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

## OPINION

FRIEDLAND, Circuit Judge:

Defendant-Appellant Vicente Cuevas-Lopez pleaded guilty to attempted illegal reentry after deportation in violation of 8 U.S.C. § 1326. In determining Cuevas-Lopez's sentence, the district court applied a ten-level enhancement to his base offense level pursuant to United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines Manual") § 2L1.2(b)(3)(A) ("the Enhancement"), as had been recommended by the Pre-

Sentence Report.[1]  The Enhancement applies to a defendant charged under 8 U.S.C. § 1326 who was previously ordered deported or removed and who subsequently committed "a felony offense . . . for which the sentence imposed was five years or more."  U.S.S.G. § 2L1.2(b)(3)(A).

A state court had previously sentenced Cuevas-Lopez to two consecutive 3.5-year terms imposed on the same day for two second-degree burglary convictions.  The district court aggregated Cuevas-Lopez's two 3.5-year sentences to produce a seven-year sentence for purposes of applying the Enhancement, relying on § 4A1.2(a)(2) of the Guidelines Manual, which is known as the "single sentence rule." Cuevas-Lopez, who did not object at sentencing, now argues that the district court erred in adhering to the single sentence rule and thus in aggregating the two sentences when considering what level of enhancement to apply.  We affirm, joining the Fifth Circuit in holding that the single sentence rule in § 4A1.2(a)(2) governs the determination whether an enhancement applies under § 2L1.2(b).

## I.

## A.

The Sentencing Reform Act of 1984 established "factors to guide [federal] district courts in exercising their traditional

---

[1] We review Cuevas-Lopez's sentence based on the 2016 Guidelines Manual, which was in effect at the time of Cuevas-Lopez's sentencing. U.S.S.G. § 1B1.11 (2018) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced," unless doing so "would violate the *ex post facto* clause of the United States Constitution."); *see also United States v. Thomsen*, 830 F.3d 1049, 1071 (9th Cir. 2016).  All section references, and all citations to the Guidelines Manual, are to the 2016 version unless otherwise specified.

sentencing discretion." *Beckles v. United States*, 137 S. Ct. 886, 893 (2017). Congress simultaneously "created the United States Sentencing Commission and charged it with establishing guidelines to be used for sentencing." *Id.* Although "[t]he Guidelines were initially binding on district courts," the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), "rendered them 'effectively advisory.'" *Beckles*, 137 S. Ct. at 894 (quoting *Booker*, 543 U.S. at 245). The Guidelines Manual is nonetheless "'the starting point and the initial benchmark' for sentencing." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)).

The Guidelines Manual provides sentencing ranges determined by a combination of "the seriousness of a defendant's offense . . . and his [or her] criminal history." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342 (2016). The offense seriousness is reflected in an "offense level" comprised of a base offense level, which is assigned by the Guidelines Manual to each type of conviction; specific offense characteristics, which can increase or decrease the offense level for each offense; and upward and downward adjustments, which can be applied to any offense. *See* U.S.S.G. § 1B1.1(a)(1)–(5). A defendant is assigned criminal history points based on his or her past criminal conduct, which then places the defendant in a criminal history category between I and VI. *See* U.S.S.G. § 4A1.1; U.S.S.G. ch. 5, pt. A, Sentencing Table. The Guidelines Manual combines this criminal history category with a defendant's calculated offense level to produce a recommended sentencing range. U.S.S.G. ch. 5, pt. A, Sentencing Table.

**B.**

Cuevas-Lopez, who is a citizen of Mexico, was ordered deported from the United States in 2004, and was deported several times between 2004 and 2015. He unsuccessfully attempted to reenter the country in 2017. He was then charged with attempted illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a), as enhanced by 8 U.S.C. § 1326(b)(1). Cuevas-Lopez pled guilty to the charge, and the district court held a sentencing hearing in October 2017.

In advance of the hearing, the U.S. Probation Office prepared a Pre-Sentence Report ("PSR"). Applying § 2L1.2(a), the relevant offense guideline for illegal reentry offenses, the PSR recommended a base offense level of eight for a violation of 8 U.S.C. § 1326. With regard to specific offense characteristics, the PSR added a ten-level enhancement pursuant to § 2L1.2(b)(3)(A) based on the fact that "[a]fter [Cuevas-Lopez] was first ordered deported or removed from the United States, he sustained a felony conviction for which the sentences imposed in a two-count indictment were ordered to run consecutive," and which "resulted in a cumulative sentence that was five years or more."[2]

The ten-level enhancement arose out of Cuevas-Lopez's November 3, 2007 arrest for two felony burglaries. The first burglary was reported on November 1, 2007, and the second was committed on November 3, 2007. Cuevas-Lopez was

---

[2] Although the PSR referred to Cuevas-Lopez as having "sustained a felony conviction" after first being deported, the relevant question under § 2L1.2(b)(3) is whether a defendant "engaged in criminal conduct" after deportation that later resulted in a felony conviction. This difference is immaterial here because Cuevas-Lopez's relevant conduct and resulting convictions all occurred after he was first ordered deported.

convicted of both burglaries, and on March 10, 2008 an Arizona state court sentenced him to 3.5 years in prison for each offense, ordered to run consecutively.

The PSR applied the single sentence rule to treat Cuevas-Lopez's two consecutive 3.5-year sentences as a single seven-year sentence. This aggregated seven-year sentence triggered the ten-level enhancement under § 2L1.2(b)(3)(A) (again, the "Enhancement"), so the PSR assigned Cuevas-Lopez an adjusted offense level of 18 for the instant illegal reentry offense. It then applied a three-level downward adjustment for acceptance of responsibility, resulting in an offense level of 15. The PSR placed Cuevas-Lopez in criminal history category V based on the two burglaries discussed above and other convictions between 2006 and 2008. Cuevas-Lopez's criminal history category and offense level resulted in a Guidelines range of 37 to 46 months in prison. Without aggregating Cuevas-Lopez's two burglary sentences, § 2L1.2(b)(3)(B) would have called for an eight-level enhancement based on a 3.5-year sentence, which would have resulted in an offense level of 13 after the downward adjustment and a Guidelines range of 30 to 37 months. *See* U.S.S.G. ch. 5, pt. A, Sentencing Table.

At the sentencing hearing, the Government agreed with the PSR's recommendation and argued, based on the § 2L1.2(b)(3)(A) Enhancement, that Cuevas-Lopez's base offense level of eight was "properly enhanced by ten levels because the defendant received a seven-year consecutive state sentence . . . for two second-degree burglary counts charged in a single indictment." The district court adopted the Guidelines calculation in the PSR, to which Cuevas-Lopez did not object. The court sentenced Cuevas-Lopez to 37 months in prison and three years of supervised release.

Cuevas-Lopez timely appealed and now argues that the single sentence rule does not apply to § 2L1.2(b)(3) enhancements, and that the district court therefore should not have aggregated his two prior 3.5-year sentences for purposes of determining his Guidelines range.

## II.

### A.

Where, as here, a defendant makes an argument on appeal that was not the basis for an objection in the district court, we generally review for plain error. *See United States v. Gomez*, 725 F.3d 1121, 1125 (9th Cir. 2013) ("If the defendant fails to object, we review for plain error."); *see also* Fed. R. Crim P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). We have held, however, that "we are not limited to [plain error] review when we are presented with a question that 'is purely one of law' and where 'the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court.'" *United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1106 (9th Cir. 2009) (quoting *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1267–68 (9th Cir. 2001)).

Cuevas-Lopez urges us to apply de novo review, despite his failure to object in the district court, because his argument about when the single sentence rule applies presents a pure question of law. The Government responds that our court's "pure question of law" exception to plain error review is inconsistent with the Supreme Court's interpretation of Federal Rule of Criminal Procedure 52(b). In support, the Government cites *Puckett v. United States*, 556 U.S. 129 (2009), in which the Supreme Court held that "[f]ailure to abide by [the] contemporaneous-objection rule

ordinarily precludes the raising on appeal of [an] unpreserved claim of trial error," with a "limited exception," *id.* at 135, for a "plain error that affects substantial rights," *id.* (quoting Fed. R. Crim. P. 52(b)).  The Government also relies on Judge Graber's concurrence in *United States v. Zhou*, 838 F.3d 1007 (9th Cir. 2016), which opined that "[o]ur 'pure question of law' exception contradicts Rule 52(b) and the Supreme Court's case law."  *Id.* at 1016 (Graber, J., concurring).  We need not resolve this dispute or otherwise decide which standard of review applies here, because we would affirm under either de novo or plain error review.  For the reasons explained below, we conclude that the district court correctly interpreted the Guidelines Manual in determining that the single sentence rule applies to § 2L1.2(b) enhancements.

### B.

### 1.

Although the Guidelines are advisory only, a "district court must correctly calculate the recommended Guidelines sentence and use that recommendation as the 'starting point and the initial benchmark.'"  *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)).  The court must keep the Guidelines range "in mind throughout the process," *id.* (quoting *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc)), and "justify the extent of [any] departure from the Guidelines," *id.*  "Failure to calculate the correct Guidelines range constitutes procedural error."  *Peugh v. United States*, 569 U.S. 530, 537 (2013).

As the Supreme Court has explained, the Guidelines Manual "contains text of three varieties," each of which is written by the Sentencing Commission.  *Stinson v. United*

*States*, 508 U.S. 36, 41 (1993). The "[f]irst is a guideline provision itself," which "provide[s] direction as to the appropriate type [and extent] of punishment." *Id.* A "second variety of text in the [Guidelines] Manual is a policy statement . . . regarding application of the guidelines or other aspects of sentencing that would further the purposes of the [Sentencing Reform] Act." *Id.* (quotation marks omitted). The third type of text in the Guidelines Manual is commentary, which accompanies both guidelines and policy statements. *Id.* Commentary may serve three functions: to "interpret a guideline or explain how it is to be applied"; to "suggest circumstances which may warrant departure from the guidelines"; and to "provide background information, including factors considered in promulgating the guideline or reasons underlying promulgation of the guideline." *Id.* (alterations and citation omitted). Any modifications or amendments to the guidelines provisions themselves (the first category of text) must be accompanied by a "statement of the reasons therefor" authored by the Sentencing Commission, and take effect on a date set by the Commission, within certain statutory parameters and subject to any changes made by Congress. *See* 28 U.S.C. § 994(p).

"We interpret the Sentencing Guidelines using the ordinary tools of statutory interpretation." *United States v. Martinez*, 870 F.3d 1163, 1166 (9th Cir. 2017). Our interpretation "will most often begin and end with the text and structure of the [g]uidelines" provisions themselves. *Id.* (quoting *United States v. Joey*, 845 F.3d 1291, 1297 n.8 (9th Cir. 2017)). We also consider "the Commission's commentary interpreting or explaining the text" of those guidelines provisions. *Id.* The commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson*, 508 U.S. at 38; *see also United States*

*v. Prien-Pinto*, 917 F.3d 1155, 1157–58 (9th Cir. 2019) (following *Stinson*).  Policy statements, likewise, are binding "[t]o the extent that they interpret substantive guidelines and do not conflict with them or any statutory directives." *United States v. Chea*, 231 F.3d 531, 536 n.1 (9th Cir. 2000) (citation omitted); *see also Stinson*, 508 U.S. at 42 ("The principle that the Guidelines Manual is binding on federal courts applies as well to policy statements.").  "We may also look to [a] provision's history and purpose, such as by consulting the Commission's statements of reason for a particular amendment." *Martinez*, 870 F.3d at 1166 (citation and quotation marks omitted); *see also United States v. Ornelas*, 825 F.3d 548, 554 (9th Cir. 2016) (noting that we "look to the Commission's statements of reason for guidance" in interpreting individual guidelines).

**2.**

Chapter Two of the Guidelines Manual governs offense conduct.  The offense guideline within Chapter Two applicable to a conviction for attempted illegal reentry is § 2L1.2.[3]  Section 2L1.2(a) provides a base offense level of eight.  Sections 2L1.2(b)(1), (b)(2), and (b)(3), which contain the specific offense characteristics, apply enhancements of between two and ten levels based on a defendant's prior convictions.  Some of these enhancements depend on the types of convictions sustained and others

---

[3] The guideline applicable to a substantive offense generally also applies to inchoate offenses such as attempt.  *See* U.S.S.G. § 2X1.1 (2018).  The parties do not dispute that § 2L1.2, which is titled "Unlawfully Entering or Remaining in the United States," applies to Cuevas-Lopez's attempted illegal reentry. *See United States v. Rosales-Aguilar*, 818 F.3d 965, 972 (9th Cir. 2016) (applying § 2L1.2 to an attempted illegal reentry case).

depend on the length of sentences received. In § 2L1.2(b)(1), § 2L1.2(b)(2)(E), and § 2L1.2(b)(3)(E), the size of the enhancement turns on the type of offense.[4] The other subsections in § 2L1.2(b)(2) and § 2L1.2(b)(3), including the Enhancement, add varying levels of enhancement based on the length of a defendant's sentence imposed for prior convictions.

Subsection (b)(3), which the district court applied to enhance Cuevas-Lopez's base offense level in this case, provides in full:

> **(3)** (Apply the Greatest) If, at any time after the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct resulting in—
>
> **(A)** a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more, increase by 10 levels;
>
> **(B)** a conviction for a felony offense (other than an illegal reentry offense) for which

---

[4] In § 2L1.2(b)(1), the level of enhancement depends on whether the defendant, before committing the offense for which he is being sentenced, sustained "a conviction for a felony that is an illegal reentry offense" or sustained "two or more convictions for [improper entry] misdemeanors under 8 U.S.C. § 1325(a)." U.S.S.G. § 2L1.2(b)(1). Both (b)(2)(E) and (b)(3)(E) apply a two-level enhancement where a defendant has "three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses." U.S.S.G. § 2L1.2(b)(2)(E), (b)(3)(E).

the sentence imposed was two years or more, increase by 8 levels;

**(C)** <u>a conviction</u> for a felony offense (other than an illegal reentry offense) for which the sentence imposed exceeded one year and one month, increase by 6 levels;

**(D)** <u>a conviction</u> for any other felony offense (other than an illegal reentry offense), increase by 4 levels; or

**(E)** three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 2 levels.

U.S.S.G. § 2L1.2(b)(3) (underlining added). Subsection 2L1.2(b)(2) mirrors subsection (b)(3), but relates to a defendant's convictions, if any, sustained *before* being ordered deported or removed. *See* § 2L1.2(b)(2).[5]

---

[5] Although we apply the 2016 Guidelines Manual here, we note that § 2L1.2 was amended in 2018 to "establish[] that the application of the § 2L1.2(b)(2) enhancement depends on the timing of the underlying 'criminal conduct,' and not on the timing of the resulting conviction." U.S.S.G. Supp. to app. C, amend. 809 at 188 (Nov. 1, 2018). The amended § 2L1.2(b)(2) applies when "before the defendant was ordered deported or ordered removed . . . for the first time, the defendant engaged in criminal conduct that, at any time, resulted in" the various convictions and sentences enumerated in that section. U.S.S.G. § 2L1.2(b)(2) (2018). The Sentencing Commission simultaneously updated subsection (b)(3) to mirror the language in subsection (b)(2), *see* § 2L1.2(b)(3) (2018), though subsection (b)(3), unlike (b)(2), had already (before the 2018 amendment) depended upon the timing of the underlying conduct, rather than the underlying conviction, *see* § 2L1.2(b)(3) (2016).

Cuevas-Lopez contends that the words "a conviction" in the Enhancement (underlined above) preclude a district court from aggregating consecutive sentences for purposes of applying the Enhancement. Although this contention finds some support in the language of § 2L1.2(b)(3), we are persuaded in light of the application notes in the commentary to § 2L1.2, as well as the Sentencing Commission's statement of reasons for the 2016 amendment to § 2L1.2, that the district court properly aggregated Cuevas-Lopez's two 3.5-year sentences here.

In aggregating Cuevas-Lopez's two sentences, the district court relied on the single sentence rule. The single sentence rule falls within Chapter Four of the Guidelines Manual, which contains guidelines for categorizing a defendant's criminal history. Section 4A1.2(a) of Chapter Four defines "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). The guideline then instructs that whether to treat multiple prior sentences as a single sentence depends on whether they were separated by an intervening arrest, charged in the same instrument, or imposed on the same day. Specifically, § 4A1.2(a)(2) states:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are

counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence. *See also* § 4A1.1(e).

U.S.S.G. § 4A1.2(a)(2).

Section 4A1.2(a)(2) goes on to provide that "if prior sentences are treated as a single sentence," a court should "use the longest sentence of imprisonment if concurrent sentences were imposed" and "use the aggregate sentence of imprisonment" where "consecutive sentences were imposed." U.S.S.G. § 4A1.2(a)(2). Here, the district court applied a ten-level enhancement based on Cuevas-Lopez's consecutive 3.5-year sentences, rather than an eight-level enhancement, which would have applied had Cuevas-Lopez's two 3.5-year sentences been ordered to run concurrently (or if they had been ordered to run consecutively but the single sentence rule's aggregation provisions did not apply). Our task, therefore, is to determine whether Chapter Four's single sentence rule properly applies to § 2L1.2.

In support of his argument that the single sentence rule's aggregation provisions should not apply here, Cuevas-Lopez relies on § 2L1.2's commentary—specifically Application Note 2. Application Note 2 to § 2L1.2 gives "sentence imposed" "the meaning given the term 'sentence of imprisonment' in Application Note 2 and subsection (b) of § 4A1.2." U.S.S.G. § 2L1.2 cmt. n.2. As Cuevas-Lopez points out, this application note to § 2L1.2 does *not* reference subsection (a) of § 4A1.2, which defines "prior sentence" and contains the single sentence rule. Cuevas-Lopez argues

that because Application Note 2 specifically cross-references a part of § 4A1.2 and yet does *not* reference the part containing the single sentence rule, the Commission meant to exclude the single sentence rule from applying to the § 2L1.2(b) enhancements.

In our view, the absence of a mention of subsection (a) of § 4A1.2 in Application Note 2 to § 2L1.2 does not hold the significance Cuevas-Lopez wishes.[6]   Rather, we read § 4A1.2(b) and Application Note 2 to that section—the two Guidelines Manual components specifically referenced in § 2L1.2's commentary for purposes of defining "sentence imposed"—as simply being silent on the question whether separate sentences that are imposed on the same day and ordered to run consecutively should be aggregated for purposes of applying the Enhancement.   Other application notes to the offense guideline in which the Enhancement appears, however, speak more to the issue and evince the Sentencing Commission's intent that the single sentence rule apply to § 2L1.2(b).

One example is Application Note 3 to the § 2L1.2 offense guideline.   Note 3 instructs a court that when "applying subsections (b)(1), (b)(2), and (b)(3)" of § 2L1.2—*i.e.*, the § 2L1.2(b) enhancements—a court should

---

[6] The Guidelines Manual does state, as Cuevas-Lopez argues, that "[a]n instruction to use a particular subsection or table from another offense guideline refers only to the particular subsection or table referenced, and not to the entire offense guideline."   U.S.S.G. § 1B1.5(b)(2).   Section 4A1.2 is not, however, an offense guideline—rather, it provides "Definitions and Instructions for Computing Criminal History."   And, in any event, even if the reference to subsection (b) does not itself amount to an instruction to apply subsection (a), it still leaves us with silence on whether or not to apply subsection (a)'s single sentence rule.

"use only those convictions that receive criminal history points under § 4A1.1(a), (b), or (c)." U.S.S.G. § 2L1.2 cmt. n.3. Criminal history points are added under § 4A1.1(a) and § 4A1.1(b) based on "prior sentence[s] of imprisonment" of over 13 months (for which three points are added) and between 60 days and 13 months (for which two points are added), respectively. Under § 4A1.1(c), one additional point is added for "each prior sentence" not counted in either (a) or (b). Subsection (e) to § 4A1.1—which is not referenced in § 2L1.2's Application Note 3—instructs courts to "[a]dd 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) . . . *because such sentence was treated as a single sentence*." U.S.S.G. § 4A1.1(e) (emphasis added). The upshot is that certain "prior sentence[s] of imprisonment" in § 4A1.1(a)–(c) will actually sometimes consist of aggregated sentences from multiple separate convictions pursuant to the single sentence rule. Because Application Note 3 to § 2L1.2 instructs courts, for purposes of applying the § 2L1.2(b) enhancements, to use only convictions that receive criminal history points under subsections (a)–(c) of § 4A1.1, it suggests that whether and how a conviction should be counted for purposes of a § 2L1.2(b) enhancement depends on the operation of the single sentence rule.

This understanding is reinforced by a second directive in Application Note 3 to § 2L1.2—that "for purposes of subsections (b)(1)(B), (b)(2)(E), and (b)(3)(E)"[7] of that section, courts "use only those convictions that are counted separately under [the single sentence rule in] § 4A1.2(a)(2)." U.S.S.G. § 2L1.2 cmt. n.3. This directive further suggests

---

[7] These subsections retained a categorical approach after the 2016 amendment to § 2L1.2, discussed below, and deal with prior misdemeanor convictions. *See infra* n.9.

that the Sentencing Commission anticipated that in some instances two or more *convictions* could be counted—and referred to—as *one* under the single sentence rule, and that a court should do so for purposes of other subsections of § 2L1.2.  Were this not the baseline assumption, there would be no need to explicitly make the single sentence rule inapplicable to these subsections.  Application Note 3 therefore weighs in favor of applying the single sentence rule to determine which § 2L1.2(b)(3) enhancement applies.

Application Note 4 to § 2L1.2, which deals with cases in which a sentence for an illegal reentry offense was imposed at the same time as one for another felony offense, lends some additional support for applying the single sentence rule.  It provides:

> There may be cases in which the sentences for an illegal reentry offense and another felony offense were imposed at the same time and *treated as a single sentence* for purposes of calculating the criminal history score under § 4A1.1(a), (b), and (c).  In such a case, use the illegal reentry offense in determining the appropriate enhancement under subsection (b)(1), if it independently would have received criminal history points.  In addition, use the prior sentence for the other felony offense in determining the appropriate enhancement under subsection (b)(3), if it independently would have received criminal history points.

U.S.S.G. § 2L1.2 cmt. n.4 (emphasis added).  Like Note 3, this application note appears to assume that § 4A1.2(a)'s

single sentence rule would normally apply to § 2L1.2(b) enhancements.

## 3.

The Sentencing Commission's statement of reasons for the amendment to § 2L1.2 that created the version applicable here also supports the district court's application of the single sentence rule. *See Ornelas*, 825 F.3d at 554 (looking "to the Commission's statements of reason for guidance" in interpreting a guideline). Before that 2016 amendment, § 2L1.2(b) enhancements were based on "the nature of a defendant's most serious conviction," as determined by the "categorical approach to the penal statute underlying the prior conviction." U.S.S.G. Supp. to app. C, amend. 802 at155 (Nov. 1, 2016) ("Amendment 802"). Under the categorical approach, courts "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." *Descamps v. United States*, 570 U.S. 254, 257 (2013).[8] Due to a concern that this method of determining a level of enhancement was "overly complex," the Sentencing Commission adopted a simpler, sentence-based model whereby, with a few exceptions,[9]

---

[8] We note, however, that even before 2016, the § 2L1.2(b)(1)(A) and (B) enhancements required a court to use both a categorical approach and a sentence-imposed approach, as subsection (A) applied where a defendant sustained "a conviction for a felony offense that [was] . . . a drug trafficking offense for which the sentence imposed exceeded 13 months," and subsection (B) applied where a defendant sustained a felony drug trafficking conviction "for which the sentence imposed was 13 months or less." U.S.S.G. § 2L1.2(b)(1) (2015).

[9] The guideline retained the categorical approach for § 2L1.2(b)(1)(B), (b)(2)(E), and (b)(3)(E), relating to predicate

"[t]he level of the sentencing enhancement for a prior conviction generally [would] be determined by the length of the sentence imposed for the prior offense."[10]  Amendment 802 at 155.

In a section of the statement of reasons titled "Accounting for Other Prior Convictions," the Sentencing Commission analogized the sentence-imposed approach in subsections (b)(2) and (b)(3) "to how Chapter Four of the Guidelines Manual determines a defendant's criminal history score based on his or her prior convictions"—notably referencing Chapter Four (in which the single sentence rule appears) in its entirety.  Amendment 802 at 156.  "The [Sentencing] Commission concluded that the length of sentence imposed by a sentencing court is a strong indicator of the court's assessment of the seriousness of the predicate offense at the time, . . . consistent with how criminal history is generally scored in . . . Chapter Four of the Guidelines Manual."  Amendment 802 at 157.  The Commission also wrote, in a section titled "Illegal Reentry": "The definition of 'sentence imposed' [in the amended § 2L1.2] is the same definition that appears in Chapter Four of the Guidelines Manual."[11]   Amendment 802 at 155.  The Sentencing

---

misdemeanor convictions, as well as § 2L1.2(b)(1)(A), relating to predicate illegal reentry felonies.

[10]  Additionally, before 2016, § 2L1.2(b) included only an enhancement for convictions that occurred *before* deportation.  *See* U.S.S.G. § 2L1.2 (2015).  Amendment 802 sought to address a concern that, because of this, § 2L1.2 did not sufficiently account for all types of criminal conduct committed by persons charged with illegal reentry.  Amendment 802 at 155–56.

[11] We note that although Chapter Four uses the term "sentence imposed," it does not specifically define it.

Commission did not limit this explanation to any particular provision of Chapter Four, thereby seeming to incorporate Chapter Four's single sentence rule.

Similarly, the Commission wrote, in a section of the statement of reasons titled "Excluding Stale Convictions," that in the context of § 2L1.2's specific offense characteristics, "it is . . . appropriate to employ the criminal history rules." Amendment 802 at 159. Because the single sentence rule is contained in the part of Chapter Four that prescribes the criminal history rules, this statement also suggests that the Commission envisioned that the rule would apply to the § 2L1.2(b) enhancements.

Perhaps the strongest evidence of the Commission's intent appears in another passage of the statement of reasons under the heading "Application of the 'Single Sentence Rule,'" which discusses the 2016 addition of what became Application Note 4 to § 2L1.2. *See* Amendment 802 at 159. As we have mentioned, Application Note 4 deals with cases in which a defendant is sentenced for an illegal reentry offense at the same time as another federal felony offense. In such cases, "the illegal reentry offense counts towards subsection (b)(1), while the other felony offense counts towards subsection (b)(3)." Amendment 802 at 159. The Commission explained in the statement of reasons that it intended "to make a distinction between illegal reentry offenses and other types of offenses," and "concluded that it was appropriate to ensure that such convictions are separately accounted for under the applicable specific offense characteristics, even if they might otherwise constitute a 'single sentence' under § 4A1.2(a)(2)." Amendment 802 at 159. Thus, both the text of Application Note 4 and the Commission's stated reason for adding it are

based on an assumption that the single sentence rule would apply to § 2L1.2.

Applying the single sentence rule to § 2L1.2 also makes sense in light of the Sentencing Commission's purpose in drafting Amendment 802. The amended enhancements' "sentence imposed" approach replaced the earlier categorical method and was intended to capture—in a simpler way—the seriousness of a defendant's prior offense. The single sentence rule requires aggregation only when sentences are ordered to run *consecutively*. The imposition of consecutive, rather than concurrent, sentences generally reflects a decision by either a sentencing judge or, in some cases when sentences are statutorily required to run consecutively, by a legislature, that a consecutive term of imprisonment would better reflect the seriousness of a defendant's conduct as well as the need for deterrence, education or treatment of the defendant, and protection of the public. *See* 18 U.S.C. § 3584 (stating that "[m]ultiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively," and directing judges to consider the sentencing factors set forth in 18 U.S.C. § 3553 "in determining whether the terms imposed are to be ordered to run concurrently or consecutively"); 18 U.S.C. § 3553 (sentencing factors); *Setser v. United States*, 566 U.S. 231, 236 (2012) ("Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose."). Applying the single sentence rule to the § 2L1.2(b)(2) and (b)(3) enhancements therefore captures the seriousness of a defendant's prior convictions and achieves the same goal that the previous categorical approach sought to achieve.

**4.**

Even if there were some ambiguity in how broadly the Sentencing Commission intended the single sentence rule to apply, as the dissent's arguments for a contrary interpretation suggest there may be, the goal of avoiding a circuit split would lead us to hold that the single sentence rule applies here.  "[A]bsent a strong reason to do so, we will not create a direct conflict with other circuits." *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1374 (9th Cir. 1987); *see also Global Linguist Sols., LLC v. Abdelmeged*, 913 F.3d 921, 923 (9th Cir. 2019) ("[W]e so hold to avoid an unnecessary circuit split.").  The Fifth Circuit recently became the first circuit court to answer whether, under the 2016 Guidelines Manual, the single sentence rule applies to § 2L1.2(b).  In *United States v. Garcia-Sanchez*, that court held that it does.  916 F.3d 522, 526 (5th Cir. 2019).[12]  The *Garcia-Sanchez* decision therefore weighs heavily in favor of affirming the district court's interpretation here.

The Fifth Circuit found support for its conclusion in two components of Amendment 802 discussed above.  It first looked to the section on "Accounting for Other Prior Convictions" in the Sentencing Commission's statement of reasons for Amendment 802, which described the length of a sentence imposed as "a strong indicator of the court's assessment of the seriousness of the predicate offense," and as "consistent with the Chapter Four criminal history rules." *Garcia-Sanchez*, 916 F.3d at 527 (quoting Amendment 802 at 157–58).  The Fifth Circuit further relied on the section

---

[12] Prior to *Garcia-Sanchez*, the Fifth Circuit had held in *United States v. Ponce-Flores*, 900 F.3d 215 (5th Cir. 2018), that because any error could not have been obvious, a district court did not plainly err in applying the single sentence rule to a § 2L1.2 enhancement. *Id.* at 219.

titled "Excluding Stale Convictions," which explains that, in the context of § 2L1.2(b)'s specific offense characteristics, "it is . . . appropriate to employ the criminal history rules," which contain the single sentence rule. *Id.* (quoting Amendment 802 at 159).

The court in *Garcia-Sanchez* also found persuasive the Fourth Circuit's reasoning in *United States v. Martinez-Varela*, 531 F.3d 298 (4th Cir. 2008). In that case, the district court aggregated sentences for purposes of applying a pre-2016 version of § 2L1.2(b)(1), which called for an enhancement if a defendant was "previously convicted of a drug trafficking offense for which the 'sentence imposed' was greater than thirteen months." *Martinez-Varela*, 531 F.3d at 299. That version of § 2L1.2, like the 2016 version, contained an application note that referenced Application Note 2 and subsection (b) of § 4A1.2 for purposes of defining "sentence imposed." *Id.* at 300. The Fourth Circuit affirmed, reasoning that although the provisions cross-referenced in application notes to § 2L1.2 did not specifically address the issue of aggregating sentences, commentary to § 4A1.1 instructed that "§§ 4A1.1 and 4A1.2 must be read together," providing "strong evidence that these two provisions should be read together in determining [the defendant's] criminal history points," and thus that the single sentence rule should apply to the § 2L1.2(b)(1) enhancement at issue. *Id.* at 301–02.

Although our court had no previous occasion to reach the sentencing question presented here, the holding in *Garcia-Sanchez* and the reasoning in *Martinez-Varela* are consistent with our case law. We previously recognized that "[s]ections 2L1.2(b) and 4A1.1-2 serve the same underlying function" of "determin[ing] the extent to which prior convictions affect a defendant's sentence for the current

offense," and that it therefore "makes sense to treat prior sentences in the same manner when they are used to determine the offense level under section 2L1.2 as when they are used to determine the criminal history category." *United States v. Ortiz-Gutierrez*, 36 F.3d 80, 82 (9th Cir. 1994);[13] *see also United States v. Moreno-Cisneros*, 319 F.3d 456, 458–59 (9th Cir. 2003) (noting that "Guideline § 4A1.2 is analogous to § 2L1.2(b)(1)," and that § 4A1.2 is "broadly applicable"); *United States v. Frias*, 338 F.3d 206, 210 (3d Cir. 2003) (describing Chapter 4 and an earlier version of § 2L1.2 as "clearly aimed at the same thing, which is varying the punishment based on the criminal record," and concluding that it therefore made sense to refer to Chapter Four's definitions in applying § 2L1.2 (quotation marks omitted)); *United States v. Galicia-Delgado*, 130 F.3d 518, 521 (2d Cir. 1997) ("[T]he definitions found in § 4A1.2 have often been borrowed to interpret terms in § 2L1.2.").

We thus now join the Fifth Circuit in holding that the single sentence rule applies to the enhancements in § 2L1.2(b)(2) and (b)(3).[14]

---

[13] In *Ortiz-Gutierrez*, we applied the single sentence rule to another pre-2016 enhancement under § 2L1.2 that turned on whether a defendant's predicate offense was an aggravated felony, which at the time "include[d] a crime of violence for which the defendant was sentenced to at least five years imprisonment." 36 F.3d at 82. Section 2L1.2 did not cross-reference either § 4A1.1 or § 4A1.2. *Id.*

[14] We reject Cuevas-Lopez's argument that we should apply the rule of lenity to hold in his favor. "[T]he rule of lenity applies to the Sentencing Guidelines," but "only . . . where there is grievous ambiguity or uncertainty in the guidelines." *United States v. D.M.*, 869 F.3d 1133, 1144 (9th Cir. 2017). We find no such "grievous ambiguity or uncertainty" in the question of Guidelines Manual interpretation presented here.

## III.

For the foregoing reasons, we reject Cuevas-Lopez's argument that the district court was wrong to apply the single sentence rule in calculating his sentence. We therefore **AFFIRM**.

---

IKUTA, Circuit Judge, dissenting:

Under the plain language of the Guidelines, the district court should have calculated a Guidelines range of 30 to 37 months for Cuevas-Lopez. Instead, the district court applied an unrelated section of the Guidelines to miscalculate a Guidelines range of 37 to 46 months. Because the district court sentenced Cuevas-Lopez to the bottom of the Guidelines range, Cuevas-Lopez was effectively deprived of the chance to get a 30-month sentence, instead of a 37-month sentence. On de novo review, I would apply the Guidelines as written, and therefore I dissent.

I

The factual background is simple. Vicente Cuevas-Lopez, a citizen of Mexico, was deported from the United States in 2004. In 2007, while in the United States illegally, Cuevas-Lopez was convicted in Arizona state court of two counts of second-degree burglary, one for burglarizing a residence and the second for taking power tools from a victim's back yard. On March 10, 2008, he was sentenced to three and a half years on each count.

In 2017, Cuevas-Lopez attempted to reenter the United States illegally in Nogales, Arizona, but was stopped by

Border Patrol agents. He later pleaded guilty to attempted illegal reentry after deportation, 8 U.S.C. § 1326.

In calculating the Guidelines range, the district court applied a ten-level sentencing enhancement. Such an enhancement applies only to a defendant who engaged in conduct that resulted in a conviction for a felony offense for which the sentence imposed was five years of imprisonment or more. U.S.S.G. § 2L1.2(b)(3)(A).[1] Although Cuevas-Lopez had not been convicted of such an offense—the longest sentence imposed on him was three and a half years of imprisonment—the district court added his two sentences for second-degree burglary together, and concluded the ten-level enhancement was applicable. In light of this enhancement, the court calculated a Guidelines range of 37 to 46 months in prison. Under the correct calculation, the Guidelines range would have been 30 to 37 months in prison. *See id.* § 2L1.2(b)(3)(B). Because the court imposed a sentence at the bottom of the range, there is a chance that Cuevas-Lopez would have been sentenced differently had the district court made the correct calculation. *See United States v. Munoz-Camarena*, 631 F.3d 1028, 1031 (9th Cir. 2011) (holding that an error in calculating the Guidelines range was not harmless because "had the district court started with the correct Guidelines range of 24 to 30 months, rather than 33 to 41 months, it may have arrived at a different sentence").

Today, the majority affirms the district court's calculations under de novo review. But a straightforward

---

[1] Because Cuevas-Lopez was sentenced in 2016, all references to the Guidelines refer to the 2016 version of the Guidelines, unless otherwise stated. *See* U.S.S.G. § 1B1.11.

reading of the text of the Guidelines shows that the majority is wrong.

## II

A district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Failure to correctly calculate "the recommended Guidelines sentencing range is a significant procedural error that requires us to remand for resentencing." *Munoz-Camarena*, 631 F.3d at 1030.

"We interpret the Sentencing Guidelines using the ordinary tools of statutory interpretation." *United States v. Martinez*, 870 F.3d 1163, 1166 (9th Cir. 2017). "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). "As with the interpretation of legal texts generally, our search for the Sentencing Commission's intent will most often begin and end with the text and structure of the Guidelines." *United States v. Joey*, 845 F.3d 1291, 1297 n.8 (9th Cir. 2017) (cleaned up).

The offense guideline section applicable to Cuevas-Lopez's offense is § 2L1.2 (the "Unlawful Reentry Offense" guideline). To calculate Cuevas-Lopez's offense level, the court must first identify the "Base Offense Level" under the Unlawful Reentry Offense guideline. *See* U.S.S.G. § 1B1.1(a)(1). In this case, the Unlawful Reentry Offense guideline provides a single Base Offense Level of eight points for violations of 18 U.S.C. § 1326. *Id.* § 2L1.2(a).

The court should then turn to the "Specific Offense Characteristics" for the Unlawful Reentry Offense, § 2L1.2(b), which sets out the enhancements to the Base Offense Level, *id.* § 1B1.1(a)(2).  Under subsection (3)(A) of the Special Offense Characteristics, the district court must impose a ten-level enhancement if the defendant engaged in criminal conduct that resulted in "a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more."  *Id.* § 2L1.2(b)(3)(A).[2]  Subsection (3)(B) of the Special Offense Characteristics mirrors subsection (3)(A) and requires the district court to impose an eight-level enhancement if the defendant's criminal conduct resulted in "a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more."  *Id.* § 2L1.2(b)(3)(B).[3]

---

[2] Section 2L1.2(b)(3)(A) provides:

> If, at any time after the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct resulting in . . . a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more, increase by 10 levels.

[3] Section 2L1.2(b)(3)(B) provides:

> If, at any time after the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct resulting in . . . a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more, increase by 8 levels.

In this case, Cuevas-Lopez's criminal conduct resulted in "a conviction" for second degree burglary for which the sentence imposed was three and a half years. Although Cuevas-Lopez's conduct also resulted in a second conviction for a second degree burglary, the plain text of subsection (3)(A) to the Special Offense Characteristics does not permit a court to aggregate the sentences of multiple convictions. *See id.* § 2L1.2(b)(3)(A). Rather, subsection (3)(A) distinctly refers in the singular to "*a* conviction" and "*the* sentence." *Id.* Therefore, subsection (3)(B) of the Special Offense Characteristics, which applies to "a conviction for a felony offense . . . for which the sentence imposed was two years or more," is the applicable enhancement, and the court should have added only eight levels to Cuevas-Lopez's offense level. *Id.* § 2L1.2(b)(3)(B).

The commentary to the Unlawful Reentry Offense guideline, § 2L1.2, is consistent with the conclusion that the "sentenced imposed" in this case was a three and a half year sentence, and that the court could not aggregate sentences from multiple convictions. The term "sentence imposed" is defined in Comment 2 to the Unlawful Reentry Offense guideline[4] as having "the same meaning given the term 'sentence of imprisonment'" in "Definition and Instructions

---

[4] Application Note 2 to § 2L1.2 provides:

"Sentence imposed" has the meaning given the term "sentence of imprisonment" in Application Note 2 and subsection (b) of §4A1.2 (Definitions and Instructions for Computing Criminal History). The length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole, or supervised release.

for Computing Criminal History," § 4A1.2(b)[5], and in Application Note 2[6] to that section, *see id.* § 2L1.2 cmt. 2. Because the cross-referenced provisions are in Chapter 4, their purpose is to instruct the court on how to calculate the

---

[5] Section 4A1.2(b) defines "sentence of imprisonment." It provides:

> (1) The term "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed.

> (2) If part of a sentence of imprisonment was suspended, "sentence of imprisonment" refers only to the portion that was not suspended.

[6] Application Note 2 to § 4A1.2 provides:

> Sentence of Imprisonment.—To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time). See §4A1.2(a)(3) and (b)(2). For the purposes of applying §4A1.1(a), (b), or (c), the length of a sentence of imprisonment is the stated maximum (e.g., in the case of a determinate sentence of five years, the stated maximum is five years; in the case of an indeterminate sentence of one to five years, the stated maximum is five years; in the case of an indeterminate sentence for a term not to exceed five years, the stated maximum is five years; in the case of an indeterminate sentence for a term not to exceed the defendant's twenty-first birthday, the stated maximum is the amount of time in pre-trial detention plus the amount of time between the date of sentence and the defendant's twenty-first birthday). That is, criminal history points are based on the sentence pronounced, not the length of time actually served. See § 4A1.2(b)(1) and (2). A sentence of probation is to be treated as a sentence under §4A1.1(c) unless a condition of probation requiring imprisonment of at least sixty days was imposed.

criminal history points associated with each sentence. *Id.* § 1B1.1(a)(6).

The cross-referenced section and Application Note make clear that the term "sentence of imprisonment" refers to the sentence pronounced by the court on a single conviction. The section in "Definition and Instructions for Computing Criminal History," § 4A1.2(b), states that a sentence of imprisonment "refers to the maximum sentence imposed" and does not include any portion of the sentence that was suspended. Application Note 2 to that section explains that "to qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence." *Id.* § 4A1.2 cmt. 2. Moreover, in calculating the criminal history points associated with a "sentence of imprisonment," the commentary makes clear that "criminal history points are based on the sentence pronounced, not the length of time actually served." *Id.* In short, each reference to "sentence of imprisonment" refers to a single sentence. The term "sentence imposed" has "the same meaning given the term 'sentence of imprisonment,'" and it therefore also refers to the sentence pronounced on a single conviction. *See id.* § 2L1.2 cmt. 2.

Because the language of the Guidelines "is plain and admits of no more than one meaning" our "sole function" is to enforce the terms of the Guidelines pursuant to their plain meaning. *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 878 (9th Cir. 2001) (en banc) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). Here, subsection (3)(A)'s ten-level enhancement does not apply to Cuevas-Lopez because he does not have "a conviction for a felony offense . . . for which the sentence imposed was five years or more." U.S.S.G. § 2L1.2(b)(3)(A). Although Cuevas-Lopez's conduct resulted in two sentences for three

and a half years each, neither sentence is a sentence of "five years or more." *Id.* Therefore, the enhancement is inapplicable.

## III

Instead of applying the language of the Guidelines, the majority relies on complex and roundabout extrapolations to assert that an unrelated section in the Criminal History chapter (Chapter 4) applies to the Unlawful Reentry Offense guideline, § 2L1.2, and requires the district court to add together Cuevas-Lopez's two separate second-degree burglary offenses.

## A

The unrelated section on which the majority puts so much weight is referred to as the "Single Sentence Rule." *Id.* § 4A1.2(a)(2).[7] In calculating a defendant's criminal

---

[7] Section 4A1.2(a)(2) provides:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence. *See also* § 4A1.1(e).

history, the court must add a specified number of points for each of the defendant's prior sentences. *Id.* § 1B1.1(a)(2). Chapter 4 defines the term "prior sentence" to mean "any sentence previously imposed upon adjudication of guilt." *Id.* § 4A1.2(a)(1). The Single Sentence Rule explains that if the defendant "has multiple prior sentences," the court counts them separately if the sentences are separated by an intervening arrest, as when the defendant was arrested for the first offense before committing the second offense. *Id.* § 4A1.2(a)(2). Prior sentences are counted as a single sentence if there was no intervening arrest and they "resulted from offenses contained in the same charging instrument" or "the sentences were imposed on the same day." *Id.*

The majority concludes that a court must read the term "sentenced imposed" in subsection (3)(A) of the Unlawful Reentry Offense guidelines to mean the same as the term "prior sentence" in the Single Sentence Rule. Maj. Op. 16. Therefore, according to the majority, under subsection (3)(A) of Unlawful Reentry Offense Guidelines, Cuevas-Lopez's two convictions for second-degree burglary should be counted as a single conviction, and the two separate three and a half year sentences imposed for each convicted should be counted as a single sentence for "five years or more." Maj. Op. 16.

Notably lacking from the majority's analysis is a single word, phrase, or cross-reference in the Guidelines that would authorize a court to apply the Single Sentence Rule in the

> For purposes of applying §4A1.1(a), (b), and (c), if prior sentences are treated as a single sentence, use the longest sentence of imprisonment if concurrent sentences were imposed. If consecutive sentences were imposed, use the aggregate sentence of imprisonment.

context of the Unlawful Reentry Offense guidelines.  Nor is there any provision in the Guidelines which suggests the term "sentence imposed" has the same meaning as "prior sentence."  *See Burgess v. United States*, 553 U.S. 124, 130 (2008) ("As a rule, [a] definition which declares what a term 'means' . . . excludes any meaning that is not stated." (quoting *Colautti v. Franklin*, 439 U.S. 379, 392–393 n.10 (1979)).  Therefore, to reach this conclusion, the majority lets loose an entire quiver of strained arguments, none of which hits the mark.

First, the majority brushes aside Cuevas-Lopez's textual argument (i.e., that nothing in subsection (3)(A) of the Unlawful Reentry Offense guidelines incorporates the Single Sentence Rule's definition of "prior sentence") on the specious ground that subsection (3)(A) does not expressly say that the Single Sentence Rule is *not* applicable.  *See* Maj. Op. 16 (noting that subsection (3)(A) is "simply being silent" on that question).  This is meritless.  If a Guidelines section uses a defined term (here, "sentenced imposed") that does not cross-reference a different defined term in a different section (here, "prior sentence"), the natural inference is that the definition of the unrelated term is not applicable.  *See Burgess*, 553 U.S. at 130; *Lamie v. U.S. Trustee*, 540 U.S. 526, 539 (2004) (holding that courts should not add an "absent word" to a statute).

But the majority has more arguments up its sleeve.  According to the majority, Application Note 3 to the Unlawful Reentry Offense guidelines[8], "evince[s] the

---

[8] Application Note 3 to § 2L1.2 provides:

Criminal History Points.—For purposes of applying subsections (b)(1), (b)(2), and (b)(3), use only those

Sentencing Commission's intent that the single sentence rule apply" to subsection (3)(A). Maj. Op. 16. The majority's reasoning is difficult to follow. The majority notes that Application Note 3 to the Unlawful Reentry Offense guideline explains which convictions qualify as "a conviction for a felony offense . . . for which the sentence imposed" was a specified length of time. U.S.S.G. § 2L1.2(b)(3)(A); Maj. Op. 16–17. According to Application Note 3, the court should count only a conviction that received criminal history points pursuant to the "Criminal History Category" guideline, §§ 4A1.1(a), (b) and (c). *Id.* § 2L1.2 cmt. 3. These "Criminal History Category" guideline subsections tell a court to add a specified number of criminal history points for each "prior sentence of imprisonment," depending on the sentence's length. *Id.* §§ 4A1.1(a), (b), & (c). The majority then jumps to a different subsection of the "Criminal History Category" guideline, § 4A1.1(e), Maj. Op. 17, which is not mentioned in Application Note 3, *id.* § 2L1.2 cmt. 3. This (unmentioned) subsection—§ 4A1.1(e)—directs a court to add a point for any prior sentence resulting from a conviction of a crime of violence that did not receive a point under the "Criminal History Category" guideline, §§ 4A1.1(a), (b) and (c), "because such a sentence was treated as a single sentence," *id.* § 4A1.1(e). According to the majority, the

> convictions that receive criminal history points under §4A1.1(a), (b), or (c). In addition, for purposes of subsections (b)(1)(B), (b)(2)(E), and (b)(3)(E), use only those convictions that are counted separately under §4A1.2(a)(2).

A conviction taken into account under subsection (b)(1), (b)(2), or (b)(3) is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History).

language in this subsection of the Criminal History Category guidelines, § 4A1.1(e) (although not mentioned in Application Note 3), shows that the Single Sentence Rule is incorporated into determining whether a defendant's criminal conduct resulted in "a conviction" for an offense "for which the sentence imposed" was five years or more under subsection (3)(A) of the Unlawful Reentry Offense guidelines. Maj. Op. 17.

This attenuated reasoning for discerning the Sentencing Commission's intent is groundless. "[T]he primary touchstone for discovering that intent is the text of the Guidelines manual" itself. *Joey*, 845 F.3d at 1297. On its face, the instruction under the subsection of the "Criminal History Category" guideline, § 4A1.1(e) (i.e., that a court should add a point for any prior sentence resulting from a conviction of a crime of violence that did not receive a point because it was treated as a single sentence), is completely irrelevant to the question before us. *See* U.S.S.G. § 4A1.1(e). At a minimum, this instruction about treatment of aggregated sentences for crimes of violence does not direct a court to consider Cuevas-Lopez's two convictions and sentences for second degree burglary as "a conviction" for which a single, seven-year sentence was imposed. *See id.* There is nothing in this unrelated guideline section that could override the plain text of subsection 3(A), the applicable Unlawful Reentry Offense guideline.

One more example of the majority's selective tour through the Guidelines will suffice. Application Note 3 to the Unlawful Reentry Offense guidelines also explains that if the defendant has prior convictions for multiple *misdemeanors*, the court should count only those convictions that would be counted separately under the Single Sentence Rule. Maj. Op. 17–18. The majority argues

that this portion of Application Note 3 "suggests" that a court should apply the Single Sentence Rule if a defendant has prior convictions for multiple *felonies* under subsection (3)(A). Maj. Op. 17–18. But of course, the language from Application Note 3 raises exactly the opposite inference: the Sentencing Commission knew how to instruct a court to consider the Single Sentence Rule for multiple misdemeanors, and did not do so for felony counts described in subsection (3)(A). *See, e.g.*, *Whitfield v. United States*, 543 U.S. 209, 216 (2005) ("Congress has included an express overt-act requirement in at least 22 other current conspiracy statutes, clearly demonstrating that it knows how to impose such a requirement when it wishes to do so.").

The majority's remaining catalog of textual arguments based on irrelevant Guidelines sections are equally unsupported, and merit no further discussion here.[9]

B

The majority's arguments based on the Amendment to Section 2L1.2 fare no better. Maj. Op. 19–22.

Prior to the 2016 amendments, § 2L1.2(b) defined the Special Offense Characteristics enhancements by reference to federal generic offenses. *See* U.S.S.G. § 2L1.2 (2015). For instance, the Specific Offense subsection required the imposition of an enhancement for defendants who previously had been convicted of a specified drug trafficking offense, crime of violence, firearms offense and the like. *Id.*

---

[9] The majority replicates the errors of the Fourth and the Fifth Circuits in *United States v. Martinez-Varela*, 531 F.3d 298 (4th Cir. 2008) and *United States v. Garcia-Sanchez*, 916 F.3d 522, 526 (5th Cir. 2019). Maj. Op. 23–25. Because those cases are also contrary to the plain text of the Guidelines, we should decline to follow them.

§ 2L1.2(b)(1)(A) (2015).  In order to determine whether a prior conviction qualified as one of these categories, the court was required to use the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990), and its progeny.  *See* U.S.S.G. § 2L1.2 (2015).  Courts complained that applying this categorical approach was "overly complex and resource-intensive."  U.S.S.G. Supp. to 5 app. C, amend. 802, at 155 (Nov. 1, 2016).  Consequently, in 2016, the Sentencing Commission decided to apply "a much simpler sentence-imposed model" in which "[t]he level of the sentencing enhancement for a prior conviction generally will be determined by the length of the sentence imposed for the prior offense."  *Id.*  It also noted that the "length of sentence imposed by a sentencing court is a strong indicator of the court's assessment of the seriousness of the predicate offense at the time." *Id.* at 157.

The majority argues that because the Amendment states that the new approach for accounting for prior convictions was "similar to how Chapter Four of the Guidelines Manual determines a defendant's criminal history score based on his or her prior convictions," *id.* at 155–56, the Sentencing Commission must have intended to incorporate Chapter 4's Single Sentence Rule into the Unlawful Reentry Offense guideline, Maj. Op. at 20–21.  Like the majority's other arguments, this one too is meritless.  First, the Amendment's brief references to Chapter Four of the Guidelines cannot override the plain language of the Guidelines text.  *Stinson*, 508 U.S. at 38 (holding that Guidelines commentary is not authoritative if it is inconsistent with the guideline itself).  But here, there is no inconsistency between the Amendment and the Guidelines, because the Amendment does not even reference the Single Sentence Rule, and there is thus no basis for concluding the rule is incorporated in the Unlawful

Reentry Offense guideline.  *See* U.S.S.G. Supp. to 5 app. C, amend. 802, at 155–57 (Nov. 1, 2016).

Moreover, even if it were proper to stray from the text of the Guidelines, the reasoning expressed in the Amendment is more consistent with the conclusion that courts should not apply the Single Sentence Rule when determining the Special Offense Characteristics under the Unlawful Reentry Offense guidelines.  *Id.*  The Commission explained that it used the "the length of sentence imposed" because the length of a sentence "is a strong indicator of the court's assessment of the seriousness of the predicate offense."  *Id.* at 157.  In other words, the length of the sentence serves as a proxy for the seriousness of the crime.   But if that was the Commission's intent, then it is illogical to aggregate crimes. Plainly, two second-degree burglaries which each receive three-year sentences are not as serious as, for example, an armed robbery which results in a six-year sentence.  Thus, to the extent that the Amendments are relevant, they support the same outcome.[10]

---

[10] The majority asserts that 18 U.S.C. § 3584 (which requires a sentencing court to consider various factors when determining whether prison terms imposed for each offense are to run consecutively or concurrently) supports its argument that the Single Sentence Rule captures the seriousness of a defendant's prior offense, and therefore is a "baseline assumption" underlying the Guidelines. Maj. Op. 18, 22. Of course, § 3584 provides no guidance on how to interpret the Unlawful Reentry Offense guidelines.  Moreover, the court's duty to determine the appropriate total sentence for the *defendant* under § 3584, *see Dean v. United States*, 137 S. Ct. 1170, 1175–76 (2017), is distinct from the question before us here:  whether a single *offense* is sufficiently serious to warrant an enhancement.

\*\*\*

Under the plain language of the Guidelines, Cuevas-Lopez does not have "a conviction for a felony offense . . . for which the sentence imposed was five years or more." U.S.S.G. § 2L1.2.  This "language is plain and admits of no more than one meaning," and therefore, our "sole function" is to enforce the terms of the Guidelines pursuant to their plain meaning. *Carson Harbor Vill., Ltd.*, 270 F.3d at 878. Here the majority concedes there is no "grievous ambiguity or uncertainty" in the Guidelines here, Maj. Op. 25 n.14, but nevertheless declines to give Cuevas-Lopez the benefit of the Guidelines' plain language.  Because we should not increase the applicable Guidelines range based solely on inferences regarding the Sentencing Commission's unspoken intent, Cuevas-Lopez is entitled to a Guidelines range of 30 to 37 months, rather than the 37 to 46 months range erroneously calculated by the district court.  I dissent.